## W. BARTRAM v. THE CENTRAL TURNPIKE COMPANY, AND W. BARTRAM v. R. C. OGILBY, R. A. PEARIS, AND JAMES McDONALD.

ACT AUTHORIZING EL DORADO AND SACRAMENTO COUNTIES TO BUILD A ROAD. — There is nothing contained in the Act of 1857, submitting to the people of Sacramento and El Dorado Counties a proposition to appropriate money for the construction of a wagon road from Sacramento County, through El Dorado County, to Carson Valley, or in the Acts amendatory thereof, which gives to the two counties, or either of them, the exclusive right to construct or maintain a road along the intended route ; nor does the Act of 1862, authorizing the Board of Supervisors of El Dorado County to lease said road, grant to El Dorado County or the lessee such exclusive right.

LEGISLATIVE GRANTS.—Public grants are to be strictly construed, and nothing passes to the grantee by implication..

GRANT OF FRANCHISE.—The grant of a franchise is not exclusive, unless it is expressly made so by the grant itself.

Bartram *v.* Central Turnpike Co., and Bartram *v.* Ogilby *et als.*

RIGHT TO MAKE ROADS.—The State does not possess the exclusive authority to construct a road over the public domain, or over any land within the State; but any person who can procure from the landholder a right of way, may construct and maintain a road.

COLLECTION OF TOLLS ON ROADS.—The right to collect tolls on a road when constructed is a franchise, and cannot be exercised except it be granted by the Legislature, or some branch of the Government vested by the Legislature with the power to grant the franchise.

SAME.—The grant of a franchise to collect tolls on a particular road does not, by implication, prohibit the construction of roads parallel to the one vested with the franchise.

APPEAL from the District Court, Eleventh Judicial District, El Dorado County.

Defendants recovered judgments in the Court below, and plaintiff appealed.

The other facts are stated in the opinion of the Court.

*H. O. Beatty,* for Appellant.

*George E. Williams,* for Respondents.

By the Court, RHODES, J.

The two causes are contained in one record, and have been argued and submitted together. The questions involved in each are in most respects identical, and their separate consideration will not be required.

The plaintiff is the lessee of that portion of the Sacramento and El Dorado Wagon Road, commencing at or near Bartram's Sawmill, about eighteen miles east of Placerville, and running thence eastward to Strawberry Station, a distance of about thirty miles. The County of El Dorado, under the authority of the Act approved April 9, 1862, leased the road to the plaintiff for the term of five years, giving the lessee the right to collect certain stipulated tolls, and the lessee covenanting to put and keep the road in repair, and to pay the county fifty dollars per month, after the first three months. The road was constructed by the Counties of Sacramento and El Dorado, under the provisions of the Sacramento and El Do-

rado Wagon Road Act of 1857, and the Acts amendatory thereof, and was intended as a free public road.

At the date of the lease, the Central Turnpike Company, a corporation organized under the general laws of the State, was the owner and had the control, of a turnpike road running from Strawberry Station, westerly to Dick's Station, parallel with and near the Sacramento and El Dorado road; and at the same time Ogilby and his co-defendants (who, since the commencement of the action, have, with others, organized an incorporation, under the general Incorporation Act, under the name and style of the Teamsters' Turnpike Company) owned and had the possession of another road, running from a point not far distant from Bartram's Sawmill easterly to near Webster's Station. Webster's Station and Dick's Station are points on the Sacramento and El Dorado road and are distant from each other about one mile, and the plaintiffs claim that the Ogilby road terminated about half a mile west of Webster's Station, at Carpenter's house. At the commencement of the actions, there was no road parallel to the Sacramento and El Dorado roads between Webster's and Dick's Station, and the plaintiff then had his toll-gate between those stations.

The plaintiff instituted these actions in equity to enjoin the defendants from constructing a road, parallel with his road, connecting the western terminus of the Central Turnpike Company's road with the eastern terminus of the Ogilby road, alleging that the defendants were about to construct and open the road; that thereby he would be deprived of a large amount of tolls, and that the injury he would thus sustain would be irreparable. He alleges also that he has sustained damage, by the defendants having constructed their road across his road, and by their having taken possession of, and constructed a road, over a short space, where he had surveyed a line, and was about to construct a road, as a portion of his road; but he has not pressed those points, and it is sufficient to say that if he has sustained damage by those acts, or been wrongfully ousted from the possession of any land that he had pos-

session of in connection with his road, he has an adequate remedy at law.

The main question in the cases has been argued with great ability and zeal by the counsel of the respective parties, but we do not apprehend that it is difficult of solution. The plaintiff, in order to maintain his position, is bound to show that he has the exclusive right, during his term, to construct a road through what the parties have denominated the Placerville Pass; at least, that he alone has the right to collect tolls from persons travelling that route. We understand the plaintiff to disclaim the right to collect tolls from persons travelling over the roads of defendants, who have not passed over some portion of his road, but he insists that the defendants shall not be allowed to build a road between the termini of their roads; and if they shall be enjoined, the consequence will be that those who intend passing over the two roads of the defendants, must of necessity, pass for a short distance, over the plaintiff's road and pay toll at his gate, the result of which would be to make all who pass over the road pay the plaintiff toll. He complains that the object of the defendants in building the connecting link in their roads is to prevent the plaintiff from collecting tolls, by permitting persons to pass around his toll gate, but this position cannot be maintained, except so far as that result incidentally accrues. The apparent object of the defendants is to induce travellers to take their roads, for if persons who passed over their roads were required to pay tolls to them and also tolls to plaintiff, for passing over a mile and a half of the plaintiff's road, they would travel the plaintiff's road to save a double charge.

It will be observed that there is nothing in the Act authorizing the road to be leased, nor in the lease, which establishes a place for the collection of tolls, or restricts the lessee to any one place for the erection of his toll gate; and such being the case, he may resort to any means in his power, that would be justified by law, to collect toll from those who make use of his road.

As the result that would ensue from the construction of the

proposed road by the defendants, would be that a portion of the travel would be diverted from the plaintiff's road to the defendants' roads, the propositions of the parties is reduced to. the simple question whether the lease executed to the plaintiff by the County of El Dorado, in conformity with the Act of 1862, granted to the lessee during his term the exclusive right to maintain a road along that portion of the route where, at the date of the lease, there was no parallel road.

As already observed, the construction of the road was provided for by law, as a public highway, and no tolls were authorized to be collected, and no other or greater power over the road was conferred upon either of the counties than is given by the general road law over county roads.

Subsequently, tolls were required to be collected at Brockliss' Bridge, on the line of the road, the rates to be fixed by the Board of Supervisors of El Dorado County. But there is nothing in any of the Acts relating to the road which expressly gives the two counties, or either of them, the exclusive right to construct or maintain a road along the intended route, or that even confers upon either county the exclusive right to maintain a toll or other bridge on the proposed route at or near the Brockliss Bridge. Nor does the Act authorizing the making of the lease purport to grant to the county, nor to the lessee, such exclusive right, and no clause or covenant in the lease grants to the lessee the right claimed by him.

If the exclusive right set up by the plaintiff exists, it must arise, by implication, from the Acts of the Legislature. It is not derived from the lease alone, for under it the lessee took only such rights as the county was authorized to grant, and did grant, by virtue of the Act conferring the power.

The plaintiff, in support of the proposition, cites as conclusive authority the case of *Charles River Bridge* v. *Warren Bridge*, 11 Peters, 420, and the defendants rely with equal confidence upon the same case to maintain the negative of the question.

That case, which was so elaborately argued and fully considered, has been for years regarded as the leading authority,

in cases involving the question of exclusive privileges claimed by parties as the holders of franchises granted by or under the Acts of the Legislature, and the opinions of the Judges upon incidental points discussed and considered in the case have been often quoted in the State Courts where those points have been before them, but the decision of the Court upon the main question, has been usually relied upon as clear, if not binding authority, in support of the doctrine, that public grants are to be strictly construed, that nothing passes to the grantee by implication, and that the grant of a franchise is not exclusive, unless it is expressly made such by the grant itself. And we think that case does not sustain, but on the contrary overthrows, the plaintiff's proposition. Such is the construction that case has received in the Courts of this State.

In *Indian Cañon Road Company* v. *Robinson*, 13 Cal. 519, the plaintiff was incorporated to construct a road between two given points, and the defendants were about building another road between the same points, and the plaintiff, claiming the exclusive right, prayed for an injunction, and the Court held that since *Charles River Bridge* v. *Warren Bridge*, the recognized rule had been adverse to the claim of the first grantee of a bridge, ferry or road franchise of the exclusive right; that the grant of such franchise, did not by implication restrict the granting power from making a similar grant. In *Fall* v. *County of Sutter*, 21 Cal. 237, the question was again before the Court. The plaintiffs were the owners of a bridge franchise at Marysville, and proceeded in equity to restrain the defendants from constructing a free bridge within six hundred feet of the plaintiffs' toll bridge, and the Court held upon the authority of the same case, that the grant of such franchise to the plaintiffs did not confer upon them an exclusive right of erecting a bridge across the river at the City of Marysville. The doctrine was affirmed, upon the authority of *Charles River Bridge* v. *Warren Bridge*, by the Supreme Court of Indiana, in *Bush* v. *Peru Bridge Company*, 3 Ind. 21, where the contest was between the grantees of a ferry franchise, and subsequent grantees of a bridge franchise at the same town.

If the docrine of that case could be considered doubtful, or its authority questioned, the Court, in ascertaining whether in a given case the granting power had intended to confer, or had conferred, by a grant of the franchise, an exclusive right by implication, would be justified in looking at all the surrounding circumstances, and placing itself as near as may be in the position of the granting power at the time of the making of the grant. At the time the two counties were authorized by the Legislature to construct the road, the general law regulating the construction of turnpike roads was in force, and has so remained to the present time; and under its provisions, and subject to the conditions therein expressed, persons were permitted to construct turnpike roads and collect tolls thereon. No reason has been assigned, why the grant to the county, of the right to lease the road, and regulate the tolls to be paid to the lessee, shall be considered as of any other higher order, or as conferring a franchise of a more exclusive nature than the general grant contained in the Turnpike Act. Nor is it pretended and it could not be maintained, that the general law was in any respect repealed by the special Act. The grant of power to the county, to execute the lease, and the lease when made, was subject not only to all rights that had accrued to other persons, but also to such as might be legally acquired under the general law. In fact, the granting power recognized the existence of parallel roads, and by prohibiting the owners of such roads from becoming the lessees of the county road, the Legislature seemed to contemplate, that parallel roads would be constructed and maintained, and manifested a policy well calculated to prevent all the roads over that route from being controlled by the same person or corporation.

Justices Story and McLean, in their dissenting opinions in *Charles River Bridge* v. *Warren Bridge* seem to put much stress upon the fact that Charles River was a navigable arm of the sea, that the Legislature of Massachusetts had the exclusive control of it, and that no one could of common right erect a bridge over the river, but that authority must first be had for that purpose from the Legislature. In that

37

respect, that case is much stronger than the one before us, for the exclusive authority cannot be claimed in behalf of the State to authorize the construction of a road over the public domain, or indeed over any land within the State; but, on the contrary, any person who can procure from the landholder the right of way may construct and maintain a road. It is only in respect to the right to collect tolls on his road when constructed, that he must make application to the Legislature or some branch of the Government vested by the Legislature with the power to grant the franchise.

The Legislature had, previous to the Act of 1862, vested this franchise, in respect to the road in question, in the County of El Dorado, in trust that the proceeds should be expended in maintaining the road. Upon the passage of the Act of 1862 no new franchise was granted, nor was the existing franchise granted away from the county, but the county was empowered to lease the existing franchise, that is to say, the right to collect tolls, but not the bed of the road, for neither the county nor the State owned that—and during the term, the lessee was authorized to enjoy the franchise in the same manner and to the same extent, that the county before that time had held it. Before the Act of 1862 neither the county nor private persons were directly nor by implication prohibited from constructing roads, that might take a portion of the travel that had been accustomed to pass over the Sacramento and El Dorado Wagon Road; and we see nothing in the fact that the county was empowered to make a lease, and did execute it, that creates the prohibition by implication against the construction of parallel roads by either the county or private persons.

If this question was involved in great doubt, we would be justified in looking at the consequences of the assertion of the right claimed by the plaintiff to ascertain what was the intention of the granting power. It is the unquestioned policy of the Government to encourage the construction of roads wherever public convenience may require them, and in pursuance of that purpose private rights are made to yield to the wants

of the public.   For that purpose, private property may be taken for public use upon just compensation being made therefor.   If the doctrine contended for by the plaintiff could be maintained, each road, bridge or ferry franchise would become a monopoly, as odious in many respects as those formerly claimed by royal grant or by prescription in England for the buying, selling, making or using of those things which were considered among the necessaries of life, retarding and impeding the progress of business and improvement, and inflicting an unnecessary inconvenience and expense upon the many, with but slight corresponding gain to the few.

We are of the opinion, in any view of the case, that neither the Legislature nor the County of El Dorado, has granted to the plaintiff the exclusive right claimed by him.

The judgments for the defendants in each of the cases must be affirmed.

Mr. Chief Justice SANDERSON, having been of counsel, did not sit on the trial of these cases.