THE CANYONVILLE AND GALESVILLE ROAD COMPANY, RESPONDENTS, v. H. W. STEPHENSON ET AL., APPELLANTS.

TOLL ROAD—ROAD CORPORATION MAY USE PUBLIC HIGHWAY.—A corporation organized under the general incorporation law of this state to construct a plank or clay road, is authorized by law to appropriate and use any part of a public road which may be necessary and convenient in the location of such plank or clay road; but the corporation does not thereby acquire the right to exclude another corporation subsequently formed for the same purpose, from appropriating and using the same part of the public road when it is necessary and convenient in the location of its road.

FRANCHISE—GRANT STRICTLY CONSTRUED.—The grant of a franchise is to be strictly construed against the grantee, and nothing passes by implication. It is not exclusive unless expressly made so by the grant itself.

APPEAL from Douglas County. The facts are stated in the opinion.

*James F. Gazley and Hermann & Ball*, for appellant.

*W. R. Willis and R. S. Strahan*, for respondents.

By the Court, KELLY, C. J.:

This was an action brought in the county court by respondent to recover damages from appellants for placing a toll-gate across a road which it claimed as belonging to itself. The appellants denied that it was the property of respondent, and alleged that it belonged to the Douglas county road company, a corporation formed for the purpose of locating and constructing a road through the canyon in the southern part of Douglas county, on substantially the same line as the road of respondent. They also allege in their answer that in erecting the toll-gate they acted as the officers and employes of the Douglas county road company

and in no other capacity. A judgment was rendered in favor of respondent, and the appellants took the case to the circuit court upon an appeal.

By agreement of the parties the action was tried by the court without a jury, and as matters of fact the court found that as early as 1853 Jesse Applegate, under the superintendence of Major Alvord, U. S. A., surveyed and laid out a military road through what is known as the canyon in the southern part of Douglas county. In 1858 it was changed in some respects and worked under the superintendence of Col. Joseph Hooker, acting under the authority of the United States government. Since that time the travel has been on the Hooker road. Before the incorporation of the respondent a corporation had been formed known as the canyon road company, to construct and maintain a road through the canyon. It was worked ·by that corporation, and in some places varies a short distance from the Hooker road. The canyon road company had for some years kept a toll-gate and collected tolls under an agreement with the county court of Douglas county. But by a judgment of the circuit court for Douglas county it was dissolved at the October term, 1873. Before the dissolution of the canyon road· company the respondent was incorporated for the purpose of locating, constructing, and maintaining a road through the canyon. Prior to the first of October, 1873, the respondent surveyed and located its road the entire distance through the canyon, upon the line and route worked and occupied by the canyon road company.

On the twentieth day of December, 1873 (as appears by the pleadings), the Douglas County Road Company was incorporated for the purpose of locating and constructing a road through the said canyon; and at the April term, 1874, of the county court of Douglas county, that corporation desiring to appropriate a part of the public road running through the canyon, petitioned the county court to enter into an agreement upon the extent, terms, and conditions on which the same might be used by the corporation. The county court then and there entered into an agreement with the Douglas County Road Company upon the terms and

conditions on which it could appropriate and use the public road, and authorized that corporation to establish a toll gate and collect certain specified tolls from the traveling public in consideration of keeping the same in good repair. Afterwards, on the eighth day of February, 1875, the respondent made an agreement with the county court of Douglas county upon the extent, terms, and conditions on which the said public highway might be appropriated and used by it.

The court also found as a matter of fact that the Douglas County Road Company did not, before entering into the agreement with the county court, survey, locate, or adopt any line or definite location of its road, except that it surveyed and located a short route outside of the limits of the county road, about one half a mile in length and about five miles south of the toll gate, kept and maintained by the appellants as officers of the Douglas County Road Company and for its benefit.

Under this state of facts it is insisted by the respondent that inasmuch as it first surveyed and located its road through the canyon, neither the Douglas County Road Company nor any other corporation had a right to appropriate or use that part of the public road. We do not so construe the sections of the statute authorizing a corporation to make a public highway part of its corporate road. At the last term of this court, in the case of the *Douglas County Road Company* v. *The Canyonville and Galesville Road Company*, the court said: "The appellant (C. & G. R. Co.) had a right under the law in relation to corporations to enter upon any land between the *termini* of its road for the purpose of examining, surveying, and locating the line of it and to appropriate a strip of land not exceeding sixty feet in width for its road, where the land belonged to private individuals. And it had also the right, in case it could not agree with the owners thereof as to the compensation to be paid therefor, to maintain an action against such owners to have the value assessed and the land condemned and appropriated to its own exclusive case. And we think that if the appellant entered upon, surveyed, and selected any land

for its road which belonged to private persons, it had the exclusive right from the time of such survey and selection to appropriate the same, and that the respondent could not in any way interfere with such right, nor construct its road upon any such lands. But it does not follow that by surveying a public highway and making it a part of its corporate road the appellant thereby acquired the right to appropriate the same to its exclusive benefit, nor does it follow that the respondent (D. C. R. Co.) had no right to use such public road, or a part of its corporate road, in the same manner as appellant. The statute contemplates that in the construction of a road by a corporation it may sometimes be necessary or convenient to use part of a highway, as where it passes through a defile or canyon, or where it is difficult to construct a road alongside of the public highway, and in such cases it is provided that the public road, or so much as may be necessary and convenient, may be used, or in the words of the statute, "may be appropriated by the corporation." The word appropriated is not, however, to be here understood in the same sense as in the appropriation of lands belonging to private individuals where the corporation becomes entitled to the property. By the appropriation of part of a highway the corporation acquires no right except to use the public road in common with all others traveling upon it, unless it makes an agreement with the county court as provided in section 26, above quoted. This section of the statute does not provide that any part of a public road "may be appropriated or used and occupied" by only one corporation, nor that the first one which so uses and occupies it, or which first surveys it, shall have exclusive privileges over any other corporation which may subsequently be organized. And we think it would be unwise and impolitic to construe the statute so as to confer exclusive benefits and privileges upon one corporation, and exclude all other from the right to compete for the public travel on the public highways."

It is claimed by the respondent here, that because it surveyed and located the line of its road along the public highway leading through the canyon before the Douglas County

Road Company was incorporated, it, and it alone, had the right to appropriate the public road to its own use, to the exclusion of every other corporation. We do not so regard it. It is very certain that section thirty-six of the act relating to corporations (see Code, p. 530) confers no such exclusive privileges of this kind, either in express words, or even by implication. The great case of *Charles River Bridge* v. *Warren Bridge*, 11 Peters, 420, has generally been relied on as a clear, if not binding authority in support of the doctrine that a grant of a franchise is to be specially construed against the grantee, and that it is not exclusive unless expressly made so by the grant itself. (*Bartram* v. *Central Turnpike*, 25 Cal. 283; *Fall* v. *Sutter County*, 21 Cal. 237; *Indian Canyon Road Co.* v. *Robinson*, 13 Cal. 519; *Bush* v. *Peru Bridge Co.*, 3 Indiana, 21.

If the twenty-sixth section of the act referred to had provided that a corporation formed to construct a road might appropriate so much of a public highway as might be necessary and convenient in the location and construction of its road, and have the exclusive right to such appropriation and use, then the position taken by the respondent would undoubtedly be correct. As it is, under the existing law, both of the rival corporations have the same and an equal right to use and appropriate the portion of the public road leading through the canyon, as parts of their respective corporate roads. We are satisfied that it never was the intention of the legislative assembly to allow any corporation to obtain a complete monopoly of the trade and travel of the country by excluding rival corporations from the use of public highways where they lead through defiles and canyons, and the courts ought not to put such a construction on the act unless it is clearly susceptible of no other interpretation. When congress, by the act of March 3, 1875, granted the right of way through the public lands to railroad companies, it was deemed of so much importance to the people at large that free competition should exist for the trade and travel of the country, that it was then enacted: "That any railroad company whose right of way, or whose track or roadbed upon such right of way, passes

through any canyon, pass, or defile, shall not prevent any other railroad company from the use and occupancy of the said canyon, pass, or defile for the purposes of its road, in common with the road first located."

Our own law, which authorizes a corporation to appropriate to its own use a part of any public road, when it is necessary or convenient in the location of its corporate road, should be construed in the same spirit as the act of congress just referred to. But it is insisted by the respondent that the Douglas County Road Company did not, before making the agreement with the county court at the April term, 1874, survey, locate, or adopt any line, route, or definite location of its road, except that it surveyed and located a short route outside of the limits of the county road, the northern terminus of which was about five miles south of the toll gate in controversy, and therefore it had no right to appropriate or use that part of the public highway as a portion of its corporate road, nor erect the toll gate in controversy, across it. We do not consider it was necessary for that corporation to survey and locate any part of the line of its contemplated road between the *termini* thereof, except so much of it as was not on the county road. In other words, we hold that the Douglas County Road Company was not required by law to survey and locate that part of the public highway which it desired to appropriate to its own use. It had already been surveyed and marked out as a county road, and required no further designation to make it definite and certain. It could as well agree with the county court without as with a survey, as to the part of the public road to be appropriated by the corporation, and when the agreement was made between the county court and the Douglas County Road Company, the latter had a right to erect the toll gate upon any part of the public road so appropriated, and to use the same according to the terms and stipulations contained in the contract.

Both of these rival corporations having a right to appropriate and use the part of the public highway running through the canyon as a portion of their respective corporate roads, the county court of Douglas county was author-

ized by law to contract with either of them to keep the public road in repair and to agree on the terms and conditions upon which the same might be appropriated and used. But it was under no obligation to contract with either corporation. It, however, did enter into an agreement in writing with the Douglas County Road Company, at the April term, 1874, as the court below has found. The validity of this contract was determined by the supreme court, except as to the entry thereof upon the journal of the county court, which entry was enforced through the mandatory power of this court. (*Road Company* v. *Douglas County*, 5 Or. 406.) This agreement was and is valid and binding as well upon the county court as upon the corporation with which it was made. Neither has a right to violate it, and neither can revoke it without the consent of the other party to it.

In pursuance of this contract the Douglas County Road Company was authorized to erect the toll gate which is the subject of this litigation, and to collect tolls thereat. The appellants were acting in the capacity of officers and employes of the corporation in doing the acts complained of by the respondent, and were justified in their acts.

Upon the findings of fact in the circuit court the judgment of that court is reversed, and it is instructed to enter a judgment in favor of the appellants, with costs and disbursements.

Mr. Justice Boise, dissenting:

I do not agree with the opinion expressed by the chief justice: 1. For the reason that the Douglas County Road Company never located any road over the county road through the canyon. That is to say, that the location by survey of one half a mile of road in the canyon some miles from where the gate is kept, is not a location of the road in question. To entitle a corporation to take and use a county road as claimed in this case, the part of the county road so taken must be embraced in the line of the corporate road. 2. On the other point, that the Canyonville and Galesville Road Company, having located their road first, thereby acquired the first

right to appropriate this road, I fully expressed my views in my dissenting opinion filed in the case of the *Douglas County Road Company* v. *The Canyonville and Galesville Road Company,* and it will not be necessary to repeat them here.