## Lehigh Water Company's Appeal.

By Act of March 12th 1867, the borough of Easton was authorized to construct public water-works, and to buy the works of any existing water companies, the said works to be erected by three water commissioners to be elected by the people. By a supplement to the above Act, passed April 15th 1867, it was provided that the said water works should not be built until the question of erecting the works had been submitted to a popular vote. In 1881 a vote was taken resulting in a majority for the works, and three commissioners were elected, who proceeded to erect the works. The Lehigh Water Company, a corporation created by Act of March 20th 1860, authorized to supply the borough of Easton with water, and which had in part done so, having June 21st 1880, accepted the provisions of the Act of April 29th 1874, which provides for the incorporation of water companies, § 34, clause 3, which reads: "the right to have and enjoy the franchises and privileges of such incorporation within the district or locality covered by its charter shall be an exclusive one," filed a bill in equity for an injunction to restrain the borough of Easton from erecting the said water works:

*Held*, 1. That under the Act of April 29th 1874, the right to construct said water-works is exclusive only against other water companies, and that it was not the intent of the Legislature to prohibit a city or borough from providing its citizens with pure water by means of works constructed by itself.

2. That the Act of March 12th 1867, was not repealed by Act of April 29th 1874.

3. That the right of the borough to construct water works under Act of March 12th 1867, was not invalidated by art. XVI. sec. 1 of the Constitution, which relates to private corporations only.

4. A municipal corporation exercising the functions of a private corporation in supplying its citizens with water did not thereby lose its distinctive municipal character.

5. That by constructing works of its own the borough would not destroy the complainant's works, although it might impair their value, for which the complainant had no legal cause of complaint.

March 7th 1883. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from the Court of Common Pleas of *Northampton county*: In Equity: Of January Term 1883, No. 63.

Bill in equity, filed May 23d 1882, by the Lehigh Water Company against the Corporation of the borough of Easton, and the Board of Water Commissioners of the borough of Easton, praying for an injunction preliminary until hearing, and after final hearing perpetual, to restrain the corporation of the borough of Easton and the Town Council of said borough from constructing or providing public water works, or from appropriating any money for the construction of said water-works, and the said board of water commissioners from locating and constructing water works for the supply of the citizens of Easton with water.

The case was heard upon the bill and injunction affidavits.

102 515
129 617
102 515
186 141
102 515
148 570
102 515
162 389
102 515
176 438
102 515
d177 649
d177 655
102 515
188 265
102 515
195 569
195 570
102 515
200 404
200 615
102 515
22 SC 375
102 515
214 74
102 515
f 34 SC 384
102 515
f224 471

[Lehigh Water Company's Appeal.]

The facts set forth therein are fully stated in the opinion of the court below and in the opinion of this court, infra.

The court, after argument, entered a decree refusing the injunction and dismissing the bill, MEYERS, P. J., delivering the following opinion :

The specific grounds upon which the relief, by injunction, is sought to be sustained, are :

First. That the grant by the Act of the General Assembly, entitled "A further supplement to the borough of Easton, authorizing the Town Council of the said borough to construct and provide public water works, and to authorize the election of water commissioners," passed March 12th 1867 : and the Act of the General Assembly, entitled "A supplement to an Act providing for the purchase, erection and construction of public water works for the borough of Easton, Northampton county, by the corporate authorities of said borough," passed April 15th 1867, has no validity under article XVI., section 1, of the present Constitution, inasmuch as the borough of Easton did not avail itself of the privileges conferred by said Acts, before the adoption of said Constitution.

Second. That the plaintiffs, on the 21st of June 1880, accepted the provisions of the Act of April 29th 1874, entitled "An Act to provide for the incorporation and regulation of certain corporations," whereby "their right to have and enjoy the franchises and privileges of such corporation, within the district or locality covered by its charter is an exclusive one."

Third. That the said Acts of March 12th 1867, and April 15th 1867, are unconstitutional.

1. As to the effect of the first section of article XVI. of the present Constitution, which declares that "all existing charters or grants of special or exclusive privileges, under which a bona fide organization shall not have taken place, and business been commenced in good faith at the time of the adoption of this Constitution, shall thereafter have no validity." This article is designated "Private Corporations." It is manifest from the language of the 1st section that it was not intended to apply to municipal corporations. The charters, etc., referred to in the section, contemplate an organization by individuals under the existing charters or grants of special or exclusive privileges, and business commenced under said organization. This language is not appropriate to a mere enlargement of powers and privileges conferred upon a municipal corporation already in existence and performing its quasi governmental functions. A power subsequently conferred, or a duty imposed upon a municipal corporation to erect water works, requires no special organization to carry it into effect ; nor can it be said, that when such water-works are completed and in operation, that the municipal corporation

is doing business. A municipal corporation, like a borough, as distinguished from a private corporation, is a body politic and corporate, established by law, to share with civil government of the country, but chiefly to regulate and administer the local or internal affairs of the city, town or district which is incorporated. The word "charter," in the above section of the Constitution, is synonymous with the words "grants of exclusive or special privileges," immediately following it; and the purpose of the constitutional provision under certain conditions, is to make invalid and destroy the entire corporate power and franchise and not to make invalid and destroy a mere enlargement of privileges granted by subsequent legislation to a corporation already organized.

2. The 26th section of the Act of April 29th 1874 (Brightly 1842), relating to the incorporation and regulations of certain corporations, provides, that "corporations for any of the purposes named, and covered by the provisions of this Act, heretofore created by any special Act, or in existence under the provisions of any general law of this Commonwealth, upon accepting the provisions of the Constitution and of this Act, by writing under the seal of said corporation, duly filed in the office of the secretary of the Commonwealth, shall be entitled to all of the privileges, immunities, franchises and powers conferred by this Act upon corporations to be created under the same, etc.:

The 34th section of the same Act relates to gas and water companies, and the 3d clause of said section (Brightly 1878), provides that "the right to have and enjoy the franchises and privileges of such incorporation within the district or locality covered by its charter shall be an exclusive one; and no other company shall be incorporated for that purpose until the said corporation shall have, from its earnings, realized and divided among its stockholders, during five years, a dividend equal to eight per centum per annum upon its capital stock."

The plaintiffs having accepted the provisions of the Constitution and of the Act, claim the right to have and enjoy, exclusively except as therein restricted, the franchises conferred on them by their charter of incorporation, on the ground that the legal effect of the Act of 1874 is a repeal of the Acts of March 12th and April 15th 1867. We think not. That the plaintiffs have certain rights that are exclusive for a limited period, there is no doubt. But how and as to what parties? Clearly not against a corporation of like character authorized by law to supply water to the inhabitants of the borough of Easton, and in existence and operation at the time of the incorporation of the plaintiffs under the Act of 1874. The statute prohibits the incorporation of any other company for the same

purpose until the corporation shall have, from its earnings,
realized and divided among its stockholders, during five years,
a dividend equal to 8 per centum upon its capital stock. The
words of the statute that the right shall be an "exclusive one,"
standing alone, probably would confer such a right even as
against an existing corporation of like character, not organized
and with no water works in operation, and also against a
municipal corporation where the latter has not availed itself of
the right and privilege to erect and operate such works. But
the words immediately following the words "exclusive one,"
and part of the same sentence, manifestly show that the words
"exclusive one," have reference to the prohibition in the future
under certain limitations, of the incorporation of another com-
pany for a like purpose. It also appears that it was not the
intention of the Legislature to interfere with the municipal
rights, for the 7th clause of the same section provides "that
nothing in this section contained shall authorize a company in-
corporated under the provisions of this Act to construct gas or
water works within the limits of any municipality, where gas
or water works shall have been constructed by said municipal-
ity, without the lawful consent of said corporate authorities
thereof." Thus while the statute protects the rights of
municipalities against their invasion by incorporate companies,
where water works have already been constructed by the former,
it nowhere, either by express words or clear implication, ex-
cludes the right of municipalities having the legal authority, as
in this case, to erect water works, from exercising the same. It
is not pretended that the Acts of 1867 are expressly repealed.
The Acts that are expressly repealed are those of April 7th
1849; April 24th 1854; July 18th 1834, and March 21th
1873. Moreover the rule of construction is that "all Acts of
incorporation and Acts extending the privileges of incorporated
bodies, are to be taken most strongly against the companies.
Whatever is not expressly and unequivocally granted in such
acts is taken to be withheld:" Packer *v.* Sunbury and Erie
Railroad Company, 7 Harris 218. In this case BLACK, C. J.,
says that "the same rule was laid down by Chief Justice MAR-
SHALL in Billings *v.* The Providence Bank, 4 Pet. 514, and in
the Charles River Bridge *v.* The Warren Bridge, 11 Pet. 524,
it was placed on grounds so impregnable by the present Chief
Justice of the United States that it is not probable that we
will ever hear it seriously questioned again."

As to the unconstitutionality of the Acts of March 12th 1867
and April 15th 1867: It is contended by the plaintiffs and so
set forth in their bill, that in 1867, and prior thereto, they had
the legal right of introducing into the borough of Easton and
into such portions of Forks township as are adjacent, a supply

of pure water for the use of the inhabitants of the same; that this right was originally granted to "The West Ward Water Company" and "The Easton Water Company," bodies duly incorporated by law; that by virtue of the powers and privileges granted to said corporations they expended large sums of money in the erection and construction of water works and reservoirs and in laying water mains and pipes through various streets in said borough; that prior to 1867 "The West Ward Water Company," became the owners by purchase of a portion of the works of "The Easton Water Company," that prior to 1860 "The West Ward Water Company," became embarrassed and unable to pay their debts. The Legislature, by a supplement to their Act of incorporation, passed March 20th 1860, empowered said corporation to mortgage all their estate and their chartered and corporate franchises, rights and privileges to those persons, who, as endorsers, sureties or guarantors had paid, or were liable to pay, the indebtedness of said company, and that at any judicial sale which might be had under said mortgage, all the estate, franchises, rights and privileges of said company passed to and vested in the purchasers, who were then authorized to organize a corporation under the name and style of the Lehigh Water Company. That a mortgage was afterwards executed by the West Ward Water Company, and subsequently, by judicial sale under said mortgage, all the estate, franchises, etc., were sold by the sheriff to certain citizens of the borough of Easton for the sum of $40,000, who thereupon organized as a corporation under the name of "The Lehigh Water Company." That the Lehigh Water Company by virtue of the purchase of the corporate franchises of "The West Ward Water Company," are subject to the same duties, obligations and requirements imposed upon "The West Ward Water Company," by their Act of incorporation and supplements, viz: from time to time, and at all times, to furnish water for the extinguishment of fires free of charge to said borough, at points and places along improved property, supplied with water by said company, and to erect and keep in repair at their own expense fire-plugs for furnishing water as aforesaid, and in the event of an ornamental fountain being erected by the borough or citizens thereof, to supply the same with a reasonable quantity of water free of charge. That the said West Ward Water Company did from time to time erect a large number of fire-plugs, and they and the said plaintiff did supply the same with water for the extinguishment of fires without charge to the inhabitants of the borough of Easton. That the plaintiffs, in addition to the duty of keeping the said fire-plugs in repair, are now required by law to erect more fire-plugs in certain portions of the borough, and hereafter additional ones along streets as

[Lehigh Water Company's Appeal.]

property is improved and pipes are laid therein for the supply of water. That by section 8 of a supplement to the Act of incorporation of "The West Ward Water Company," it is further provided "that it shall not be lawful for the said ' The West Ward Water Company,' after the passage of this Act, to make a dividend among the stockholders thereof of any greater sum than 10 per cent. of the net proceeds of the said company, and whenever the same shall exceed such sum the excess thereof shall, under the approval of the court of common pleas of said county of Northampton, be invested in trust for the use of the said borough of Easton from time to time, until the amount of such fund shall equal the actual cost of the said West Ward Water Company for the erection and construction of said works, as aforesaid, when the said company shall accept the same, and in consideration thereof transfer all the rights and property aforesaid to the corporation of the borough of Easton, and until such time it shall be the duty of the managers of said company to make and report to the said court an annual statement of the business affairs of said company."

Upon this state of facts it is contended by the plaintiffs that the grant by the legislature of the State of certain privileges, powers, franchises, etc., to " The West Ward Water Company," subject to certain duties, obligations and requirements to the borough of Easton and its inhabitants, and which passed to the plaintiffs by judicial sale, constitutes a contract between the state and "The West Ward Water Company," and also " The Lehigh Water Company," and therefore the several Acts of 1867, empowering the borough of Easton to erect water works within said borough, are in violation of § 10, art. 1 of the Constitution of the United States, which declares that "no state shall pass any law impairing the obligation of contracts." This constitutional provision has frequently raised questions of no ordinary magnitude ; and, in a variety of cases, it has been the subject of adjudication by the highest judicial tribunal of the United States and of the several states, and has been argued by the ablest lawyers in the land.

It is horn book law, that an Act of Assembly is to be presumed constitutional, unless shown to be unconstitutional by the party who alleges that it is so. Courts will not declare an Act of Assembly void, unless it violates the constitution, clearly, palpably, plainly, and in such a manner as to preclude doubts or hesitation : Speer *v.* School Directors, 14 Wr. 150. The question of the unconstitutionality of the Act of 1867 might safely be determined by this rule. An examination, however, of one of the ablest text books on constitutional law, and a few leading cases decided by the Supreme Court of the United States, etc., leaves no doubt as to the constitutionality of these

laws. Cooley on Con. Lim. p. 384, states the law thus : " The granting of a new charter to a new corporation may sometimes render valueless the franchises of an existing corporation ; but unless the state, by contract, has precluded itself from such new grant, the incidental injury can constitute no obstacle." In support of this proposition he cites Charles River Bridge v. Warren Bridge, 11 Pet. 420 ; Turnpike Company v. State of Maryland, 3 Wall. 210 ; Piscataqua Bridge v. New Hampshire Bridge, 7 N. H. 35.

In a note the author briefly states the case of Charles River Bridge v. Warren Bridge as follows : " The state of Massachusetts granted to a corporation the right to construct a toll-bridge across the Charles River under a charter which was to continue for forty years, afterwards extended to seventy, at the end of which period the bridge was to become the property of the Commonwealth. During the term the corporation was to pay £200 annually to Harvard College. Forty-two years after the bridge was opened to passengers, the state incorporated a company for the purpose of erecting another bridge over the same river, a short distance only from the first, and which accommodated the same passengers. The necessary effect would be to decrease greatly the first franchise, if not to render it altogether worthless. But the first charter was not exclusive in its terms ; no contract was violated in granting the second ; the resulting injury was incidental to the exercise of an undoubted right by the state, and as all the vested rights of the first corporation still remained, though reduced in value by the new grant, the case was one of damage without legal injury."

In Turnpike Company v. State of Maryland, supra, it was held that if a state grants no exclusive privilege to one company which it has incorporated, it impairs no contract by incorporating a second one which itself largely manages and profits by to the injury of the first.

So a grant to a corporation to erect a toll-bridge without any restriction of the power of the Legislature to grant a similar privilege to others, would not deprive a future Legislature of the power to authorize the erection of another bridge, although it would divert a portion of the travel from the bridge which had been formerly erected : Mohawk Bridge Company v. U. and S. R. Co., 6 Paige 554.

A clause in a statute, " that it shall not be lawful for any person or persons to erect a bridge within a distance of two miles," means, not only that no person or association of persons shall erect such a bridge without legislative authority, but that the Legislature itself will not make it lawful for any person or association of persons to do so, by giving them authority : The Binghampton Bridge, 3 Wall. 51. To the same effect, Piscata-

[Lehigh Water Company's Appeal.]

qua Bridge *v.* New Hampshire Bridge, 7 N. H. 35. While in these cases a subsequent grant to other persons to erect a bridge within said limits is declared to be unconstitutional solely on the ground of the prohibition in the former grant, yet even to this extent the decision in the former case was by a divided court, CHASE, C. J., and GRIER and FIELD, JJ., dissenting. That it is the settled law of the land, cannot be questioned, "that a private corporation created by an Act of the Legislature, which, in connection with its acceptance, is regarded as a compact, and one which, so long as the body corporate faithfully observes, the Legislature is constitutionally restrained from impairing by annexing new terms and conditions, onerous in their operation, or inconsistent with a reasonable construction of the compact:" Angell & Ames on Corporations, p. 22. The case of Dartmouth College *v.* Woodward, 4 Wheat. 636, and subsequent cases which sanction and affirm the law of that case, are principally relied upon by the plaintiffs, that the Acts of 1867 are unconstitutional. As I understand the law and facts of that case, it has little, if any, application to the question now under consideration. The Supreme Court of the United States there held, "that the charter incorporated twelve persons therein mentioned as trustees, and granted to them and their successors the usual corporate privileges and powers, and declared that the trustees should forever thereafter consist of twelve, and no more, and should govern the college, and fill up all vacancies which might be created in the body, is a contract, within the meaning of the clause in the Constitution of the United States, which declares that no state shall pass any law impairing the obligation of contracts; and that the subsequent statutes of New Hampshire which increased the number of trustees to twenty-one, and gave the appointment of the additional members to the Executive of the state, and created a board of overseers with power to inspect and control important acts of the trustees, being passed without the previous or subsequent assent of the trustees, were unconstitutional and void." A mere statement of the case shows a radical alteration of the charter in many and material respects, by which the powers and privileges of the corporation and trustees were practically taken away, the number of trustees increased, and the appointing power vested in the Executive of the state, and the control of the corporate property and franchises conferred upon a board of overseers created for that purpose. Here then was a direct invasion of the rights of property of an incorporation, and substantially a destruction of its corporate privileges and powers. Whatever doubts may since have been entertained by courts as to the soundness of the law in that case, it need not be questioned here so far as it affects the question of the unconstitu-

tionality of the law now under consideration. That question must be ruled by the cases heretofore cited, and for the reason therein expressed we hold that the Acts of 1867 are clearly and undoubtedly constitutional.

And now, October 2d 1882, preliminary injunction refused, and the bill of plaintiffs dismissed at their costs.

The complainants thereupon took this appeal, assigning for error the decree dismissing the bill. At the argument in this court an agreement was filed, by leave of the court, that the decree refusing the preliminary injunction should be treated as a final decree, and the cause was argued as upon a demurrer to the bill.

*Edward J. Fox & Son,* for appellant.— (1) The Act of March 12th 1867, authorizing the borough of Easton to build water-works is no longer valid, because art. XVI. § 1, of the Constitution provides that "all existing charters or grants of special or exclusive privileges, under which a bona fide organization shall not have taken place and business commenced in good faith at the time of the adoption of this Constitution, shall thereafter have no validity." While the title of art. XVI. is " private corporations," it does not relate solely to private corporations, as § 8 relates to " municipal and other corporations." It is to be taken as relating to municipal corporations, in so far as it concerns grants of power for purposes of private advantage and emolument. "If a grant is made to a municipal corporation for the purpose of private advantage and emolument, though the public may derive a common benefit therefrom, the corporation quoad hoc is to be regarded as a private company. It stands upon the same footing as any individual or body of persons upon whom the special franchises had been conferred : Bailey *v.* Mayor of New York, 3 Hill 531 ; Western Savings Fund Society *v.* City of Philadelphia, 7 Casey 183 ; Wheeler *v.* City of Philadelphia, 27 Sm. 354.

Article XVI of the Constitution then avoided : (a) All existing charters under which a bona fide organization had not taken place, and (b) all grants of special and exclusive privileges to individuals : Debates in Con. Conv. vol. iv. p. 587.

The borough of Easton, so far as it has received a grant of special privileges to erect water works, is quoad hoc a private corporation, and as the borough did not organize or commence the business before the adoption of the Constitution in 1874, the Act granting such privileges is void. The borough having failed to exercise the powers conferred by the grant of Act of 1867 within a reasonable time, the right to exercise such power is lost: Chincleclamouche Lumber and Boom Co. *v.* Commonwealth, 12 Weekly Notes 357. A private corporation erected

by the legislature. may lose its franchises by a misuser or non-user of them : Mumma *v.* Potomac Co., 8 Pet. 287; Terrett *v.* Taylor, 9 Cr. 43.

(2) The Water Company having accepted the provisions of the Act of April 29th 1874, their right to supply water in the borough of Easton was an exclusive one. Sections 26 and 34, clauses 3 and 7, of above Act clearly define the rights of the company, and clearly confer the rights and privileges contended for. On June 21st 1880, the Water Company accepted the provisions of this Act, which secured to it " all the privileges, immunities, franchises and powers conferred upon corporations to be erected under the same "—one of which was the right to have and enjoy the franchises and privileges of such incorporation, within the district or locality covered by the charter, as an exclusive one.

(3) The charter of the Lehigh Water Company is a contract which the legislature could not impair in the slightest degree without violating the provision of art. 1, § 10, of the Constitution of the United States, which declares that no state shall pass any law impairing the obligation of contracts. Any Act of a Legislature which takes away any powers or franchises vested by its charter in a private corporation or its corporate officers, which restrains or controls the legitimate exercise of them, or transfers them to others without its assent, is a violation of the obligation of that charter : Dartmouth College *v.* Woodward, 4 Wheaton 712 ; Wilmington R. R. *v.* Reid, 13 Wall. 266 ; Farrington *v.* Tennessee, 5 Otto 683 ; Newburgh Turnpike Company *v.* Miller, 5 Johns. Ch. 112 ; Iron City Bank *v.* Pittsburgh, 1 Wr. 345 ; Chincleclamouche Lumber and Boom Co. *v.* Commonwealth, 12 Weekly Notes 357 ; Wales *v.* Stetson, 2 Mass. 146. The word "impair" is defined by Webster to mean " to make worse, to diminish in quantity, value, excellence or strength, to lessen in power, to weaken, to enfeeble, to deteriorate." If, then, by the construction of water works by the borough of Easton, the franchises and works of the water company should be diminished in value, the legislature, by its grant to the borough to erect such works, has impaired the obligation of the contract between the state and the company.

(4) The borough cannot erect works until it compensates the company for the loss it will sustain by the erection of rival works, and as the Act of 1867 made no provision for compensation, the grant is void. The franchises of the company are property : Wilmington R. R. Co. *v.* Reid, 13 Wall. 268 ; Commonwealth *v.* Pittsburgh & Connellsville R. R., 8 Sm. 50. Article XVI. of Constitution provides : " Municipal and other corporations taking private property for public use shall make

just compensation for property taken, injured or destroyed by the construction or enlargement of their roads, highways or improvements," etc. The section provides for the injury to private property: City of Reading *v.* Althouse, 9 Weekly Notes 24; Lycoming Gas & Water Co. *v.* Moyer, 11 Id. 443.

*M. H. Jones, W. S. Kirkpatrick* and *Robert I. Jones,* for Water Commissioners of borough of Easton.

*Frank Reeder,* for corporation of borough of Easton.—Art. XVI. § 1, of the Constitution does not apply to this case, because it refers to private corporations; it was not intended to apply to municipal corporations. The object of the article was to destroy numerous private charters under which there was no organization or business in good faith: Debates Con. Conv. vol. iv. 587. Act April 15th 1867, § 3, provides that the citizens shall have the right to determine "the question of constructing" water works at some future election. But, independent of this Act, the right of a municipal corporation "to furnish its citizens with gas or water rests on custom founded upon its long action:" Wheeler *v.* Philadelphia, 27 Sm. 354. At any rate, such right is conferred by the general borough Act of 1851, which allows all boroughs to provide a supply of water for the use of its inhabitants. Towns "may provide for support of wells, reservoirs, and for the prevention of fire:" Dillon on Municipal Corporations *9–10–13.

The cases cited, on the other side, of Bailey *v.* New York (3 Hill, 531), and Western Savings Fund Society *v.* Philadelphia (7 Casey, 175), are not authority for the propositions advanced. All that they decided is, that when a municipality makes a contract it must answer as an individual. The Act of March 12th 1867, and its supplement, authorizing the borough of Easton to provide and construct water-works, is still in force.

Schedule of the Constitution, § 2, provides: "All laws in force in this Commonwealth at the time of the adoption of this Constitution, not inconsistent therewith, and all rights, actions, prosecutions, and contracts shall continue as if this Constitution had not been adopted." The purpose to repeal must be clearly expressed in precise and positive terms: City of Pittsburgh *v.* Roup, 1 Weekly Notes 254. It is well settled that nothing in the new Constitution has the effect of a repealing Act unless it is clearly so intended. There is nothing in the Act of 1874 which expressly repeals the Act of 1867. The Act of 1874 does, indeed, repeal certain Acts, naming them, and not this. Upon the principle of *expressio unius est exclusio alterius,* the Act of 1867 is not repealed. Assuming

that the other side is right in their contention that, upon the authority of the Dartmouth College case, the Lehigh Water Company having been incorporated by the Commonwealth, no no other company can be lawfully created; yet this company accepted the Act of 1874, and, as against the municipal authorities, its exclusive right is gone. The Legislature chartered the complainant's predecessor to supply pure water, and afterwards authorized the borough to build " works using the water of the Delaware," and there can be no ground to construe this as the impairment of any contract. It is not a question as to whether the two will compete. The power to establish public water-works is a branch of police power which cannot be contracted away. The police power extends to all matters affecting the public health: Stone *v.* Mississippi, 11 Otto 818. The right to provide water cannot be exclusively committed to any corporation as against the borough or city. The authorities cited on the other side are inapplicable; all are cases of direct legislation upon the corporation itself, and most of them are tax cases.

Mr. Justice PAXSON delivered the opinion of the court, April 9th 1883.

This was an appeal from the refusal of the court below to grant a special injunction. With a view to obtain a decision of this court upon the whole case, an agreement was filed at bar giving to the decision below the effect of a final decree. We will therefore treat it as a decree entered upon a general demurrer to the bill. This admits all the facts sufficiently averred by the plaintiffs, which places them in as favorable a position as they could desire.

The plaintiffs seek to restrain the borough of Easton (defendants) from erecting water-works for the purpose of supplying said borough with water. The facts necessary to a proper understanding of the case, briefly stated, are as follows:

On the 12th of March 1867, an Act of Assembly was passed authorizing the borough of Easton to construct water-works, and to buy the works of any existing water companies, the works to be erected by three water commissioners, to be elected by the qualified voters of the borough: P. L. 412. A supplement to this Act was passed on April 15th 1867, providing that the water-works should not be built by the borough until after the question of the erection of said works has been submitted to a popular vote at a spring election, when, if a majority of the qualified voters were in favor of such erection, the town council should proceed to construct said works. A vote was taken at the spring election in 1881, resulting in a majority in favor of the works. Three persons were elected water commissioners

at the same time, who purchased a lot upon which to erect said works, and presented a petition to the Court of Common Pleas of Northampton county for the purpose of compelling the town council of the borough of Easton to supply the necessary funds.

The Lehigh Water Company (plaintiff) is a corporation duly authorized by its charter to supply the borough of Easton with water, and has expended a large amount of money in the construction of its works. It is required by its charter to erect a sufficient number of fire-plugs, and supply water to the borough for the extinguishment of fires without charge. This obligation has been performed, at least in part, and it has furnished the citizens of the borough with water. On the 21st of June 1880, the said company accepted the provisions of the Act of 29th of April 1874, P. L. 93, section 34 of which provides for the incorporation of water companies, and enacts that "the right to have and enjoy the franchises and privileges of such incorporation within the district or locality covered by its charter shall be an exclusive one," &c.

The grounds upon which the water company seeks to restrain the borough are : 1. That under the Act of 1874 the right of the water company is exclusive ; 2. That the borough has no power under the Act of 1867 to construct waterworks ; and, 3. That to do so would contravene article I. section 10, of the Constitution of the United States, which declares that " no State shall pass any law impairing the obligation of contracts."

Neither of these positions can be sustained. While the language from the Act of 1874 above quoted would seem to favor the exclusive right claimed by the water company, a careful examination of clause 3 of section 34 shows that the legislature intended that the right should be exclusive only as against other water companies, for immediately in this connection occur the words : " And no other company shall be incorporated for that purpose until the said corporation shall have from its earnings realized and divided among its stockholders, during five years, a dividend equal to eight per centum per annum upon its capital stock." The provision that another company shall not be incorporated was not intended to prohibit a city or borough from providing its citizens with pure water by means of works constructed by itself from money in its own treasury. Aside from this, the water company claims this exclusive right by reason of the Act of 1874, while the right of the borough to construct the works was conferred by the prior Act of 1867, and there is no pretence that the one Act repeals the other.

It was urged on behalf of the water company, however, that the borough cannot invoke the aid of the act of of 1867, for the reason that not having availed itself thereof prior to

the adoption of the Constitution, the right to do so now is taken away by section 1 of article XVI. of that instrument, which provides that: " All existing charters or grants of special or exclusive privileges, under which a *bona fide* organization shall not have taken place, and business been commenced in good faith, at the time of the adoption of this Constitution, shall thereafter have no validity." The 16th article of the Constitution has reference to " private corporations," and it is to such corporations alone that the first section applies. It was intended to extinguish a vast number of charters obtained for speculative purposes, under which "a bona fide organization" had not taken place nor " business been commenced in good faith," but which were being hawked about to the manifest shame of the commonwealth. No one ever supposed that this article was intended to repeal an Act of Assembly conferring additional powers upon a municipal corporation, for the mere reason that the power had not been exercised in whole or in part.

It was urged, however, with considerable ingenuity, that in erecting water works and supplying its citizens with water the borough was not acting in its capacity as a municipal corporation, but rather in that of a private or business corporation, and Western Saving Fund Society *v.* The City, 7 Casey 175 ; and Wheeler *v.* The City, 27 P. F. S. 338, were cited in support of this proposition. Those cases decide that when a municipal corporation undertakes to supply its citizens with gas and water it must be held to its contracts precisely as a private corporation. But that it is nevertheless a municipal corporation plainly appears from Wheeler *v.* The City, where it was attempted to restrain the city from borrowing money for the use of the gas works, upon the ground that such borrowing was prohibited by article IX. section 7, of the Constitution, which declares that the " General Assembly shall not authorize any county, city, borough, township, or incorporated district, to become a stockholder in any company, association or corporation, or to obtain or appropriate money for, or loan its credit to any corporation, association, institution or individual." The gas cases established the principle that a municipal corporation may perform the functions of a private corporation in supplying its citizens with gas and water. But that by doing so it loses its distinctive municipal character is a proposition that does not require discussion.

The third ground of objection is wholly without merit. By constructing water-works of its own the borough will not destroy the franchises of the plaintiff company. It may impair their value, and probably will do so, but of this the company have no legal cause of complaint. The granting of a new charter to a new corporation may sometimes render valueless

[Susquehanna Mutual Fire Ins. Co. *v.* Staats.]

the franchises of an existing corporation; but unless the state by contract has precluded itself from such new grant the incidental injury can constitute no obstacle : Charles River Bridge *v.* Warren Bridge, 11 Peters 420; Turnpike Co. *v.* The State of Maryland, 3 Wallace 210 ; Piscataqua Bridge *v.* New Hampshire Bridge, 7 N. H. 35. No contract has been shown between the water company and the state by which the latter is precluded from granting to the borough of Easton the privilege of erecting works to supply its citizens with water.

We need not pursue the subject further in view of the elaborate and careful opinion of the learned judge below.

The decree is affirmed, and the bill dismissed at the cost of the appellants.