J. F. White, F. W. Huidekoper, Edgar Huidekoper, A. C. Huidekoper, John E. Reynolds, J. D. Gill, Walter S. Harper, and Hiram L. Richmond *v.* The City of Meadville, Whitney Braymer, Mayor of said City, Francis Fox, Thomas Roddy, James A. Porter, William H. Larkins, C. P. Harris, Select Councilmen, W. W. Day, A. W. West, John B. Houser, John Rice, John M. Robinson, C. J. Matson and A. W. McCoy, Common Councilmen.

*Statutes—Interpretation of—Acts passed at the same session—Repeal.*

Statutes enacted at the same session of the legislature are within the reason of the rule governing the construction of statutes in *pari materia*, and should, if possible, receive a construction which will give effect to each. Each is supposed to speak the mind of the same legislature, and the words used in each should be qualified and restricted, if necessary, in their construction and effect, so as to give validity and effect to every other act passed at the same session.

*Municipal law—Cities of third class—Acts of May 23, 1874, and April 29, 1874.*

The act of May 23, 1874, P. L. 230, providing for the organization and government of cities of the third class, and authorizing such cities to erect and maintain waterworks, is not repugnant to, and does not repeal, the act of April 29, 1874, P. L. 73, relating to the organization of water companies for the purpose of supplying boroughs and cities with water.

*Municipalities—Waterworks—Legislative grant.*

A municipality has no implied power from the mere fact of its creation to engage in the business of supplying its citizens with water for pay. It cannot do so except by virtue of express legislative authority.

*Municipalities—Water companies—Waterworks—Acts of April 29, 1874, and May 23, 1874.*

Where a water company has been organized under the act of April 29, 1874, to supply a city with water, and the municipality has entered into a contract with the company, and permitted it to lay its pipes, the power having been once exercised to supply the city by contract through another creature of the same sovereign, the municipal function has passed from the city, and it cannot subsequently erect and maintain waterworks to supply its citizens with water in the manner contemplated by the act of May 23, 1874. The legislature authorized the municipality to adopt either method, but there is no grant of power to put both methods in operation at the same time in the same city. At the end of twenty years if the city

desires to supply its citizens with water it can do so only by purchasing . the works of the company in the mode pointed out by the act.

*Municipalities—Water companies—Repeal of statutes—Vested interests—Acts of April 29, 1874, and May 23, 1889.*

Section 34 of the act of April 29, 1874, P. L. 94, is repealed by the act of May 23, 1889, P. L. 274, but the subsequent act does not divest the rights of water companies which had vested prior to its passage.

Lehigh Water Company's Appeal, 102 Pa. 515, distinguished, and Howard's Appeal, 162 Pa. 374; overruled.

Argued June 3, 1895.    Reargued May 6, 1896.    Bill in equity, No. 235, Miscellaneous Docket, No. 1, against a municipal corporation.    Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.    Decree for plaintiffs.

Bill in equity, filed in the Supreme Court by citizens and taxpayers of a municipal corporation against said corporation, its mayor and councilmen, to restrain the construction of waterworks.

The facts appear by the opinion of the court.

*C. Heydrick*, with him *Carl I. Heydrick*, for plaintiffs, at argument of October 7, 1895.

*D. T. Watson*, *Christopher Heydrick* and *John G. Johnson*, for plaintiffs, at argument of May 6, 1896.—When the contract was executed between the Meadville Water Company and the city of Meadville, and the waterworks were constructed in pursuance thereof, the supplying of water in cities of the third class and in boroughs was regulated by three statutes, namely: (1) the general borough law of 1851; (2) the municipal corporation act of May 23, 1874; (3) the private corporation act of April 29, 1874.    The two acts last cited were passed at the same session of the legislature.    It is, therefore, just to assume that their consideration by the legislature was largely synchronous, and for this reason it is not to be assumed that it was intended by the later act to repeal any of the provisions of the earlier, unless there be such repugnancy between the two as to compel that conclusion: Smith v. The People, 47 N. Y. 330; State v. Stocking, 2 Black. Rep. 249.

The only provision in the municipal corporation act which

bears the slightest semblance of repugnancy to sec. 34 of the private corporation act is that contained in the first part of clause 9, sec. 20. The general language "to have at all times the exclusive right to supply with water the city and such persons, partnerships and corporations therein as may desire the same," is restrained by the provision in the immediate context that the municipal function in question may be committed by contract to private corporations, and the provision to have condemnation of the property franchises in such corporation. These statutes are in pari materia and as such are to be construed together, thus becoming one consistent whole, providing for the supply of water in the minor municipal corporations of the commonwealth in accordance with their varying circumstances, (1) by the municipality when in financial condition so to do; (2) by private corporations in municipalities which for any reason are unable or unwilling to exercise the delegated power, and in districts and villages possessing no political powers; thus encouraging citizens to invest in such corporations by a grant of immunity from municipal interference or competition, and by an assurance that when the municipality shall exercise its superior rights it will take the property of the corporation at its value, instead of erecting rival works to destroy its value.

If the legislature thought protection against private competition needful to promote the welfare of feeble and debt ridden communities, a fortiori, it must have regarded security against municipal hostility a sine qua non; of this we shall find further evidence in clause 7 of the 34th section of the private corporation act.

The primary object of the private corporation act was to make provision for water supply in helpless communities and districts.

The legislature must have intended one of two things when legislating on the subject of water supply in cities of the 3d class; either, 1, that the right of such cities to supply water when a supply has already been furnished by private enterprise should be in posse and not in esse, until so acquired in clause 7 of sec. 34 of the act of April 29, 1874, or sec. 50 or sec. 53 of the municipal corporation act; or, 2, that the protection guaranteed to such public spirited citizens as should undertake to supply the wants of helpless communities should be withdrawn

and those communities left absolutely without the means of obtaining one of the necessaries of life. The latter intent is so unjust and so unreasonable that it cannot be imputed to the legislature.

No statutes should be construed in such a manner as to be inconvenient or against reason : 9 Bac. Abr. Statute (1), 1–10. Courts will not presume that the legislature intended to violate a settled principle of natural justice or destroy vested title to property : Varick v. Briggs, 6 Paige, 323. Statutes should be construed so as to avoid an unjust or absurd conclusion : Lau Ow Bew v. U. S., 144 U. S. 47 ; Endlich on Interpretation of Statutes, chap. 9. '

*George W. Haskins* and *Samuel Gustine Thompson*, with them *Arthur L. Bates*, *Thomas Roddy* and *John O. McClintock*, for defendants.—The city of Meadville has a right to erect and maintain waterworks : Lehigh Water Co.'s App., 102 Pa. 515; Howard's Appeal, 162 Pa. 374 ; Luzerne Water Co. v. Toby Creek Co., 148 Pa. 568.

A grant of exclusive privileges is not favored by the law and must be construed strictly : Freeport Water Works Co. v. Prager, 129 Pa. 605.

Powers delegated to a municipal corporation cannot be vicariously exercised : 25 Am. & Eng. Ency. of Law, 1043 ; State v. Jersey City, 25 N. J. L. 536 ; Brick Presbyterian Church v. New York, 5 Cowan, N. Y. 540 ; 15 Am. & Eng. Ency. of Law, 1045 ; 4 Dillon on Municipal Corporations, par. 94 ; Branson v. Philadelphia, 47 Pa. 329 ; Johnson v. Philadelphia, 60 Pa. 445; Howard's App., 162 Pa. 374 ; Des Moines Gas Co. v. City, 24 Am. Rep. 756 ; Gale v. Kalamazoo, 23 Mich. 344; Meadville Fuel Gas Co.'s App., 4 Atl. Rep. 736.

OPINION BY MR. JUSTICE DEAN, October 5, 1896 :

The city of Meadville was incorporated by act of February 15, 1866, and supplements of March 26, and April 6, 1870. Its municipal powers and privileges are also regulated by the general act of May 23, 1874, for government of cities of the third class. Before the adoption of the present constitution, its debt exceeded two per cent of the assessed value of its taxable property. On 16th of December, 1873, an election was held to

determine whether the city should construct municipal water-works to supply the inhabitants with water; the vote was one hundred and seventy-seven for and five hundred and nineteen against the proposition. Then, August 5, 1874, the mayor was authorized by councils to appoint a committee to confer with citizens on the subject of a supply of water, and the committee was appointed; no written report seems to have been made, but on 12th of August following, it was resolved by councils that the proposition of Dick & Gill, and others, be accepted; then, on October 23, 1874, a committee of councils and the mayor were authorized to contract for the construction of such works with the "Meadville Water Company," as soon as the company was duly incorporated; articles of association were then entered into by one hundred citizens and tax payers for the formation of the company, which was duly chartered October 30, 1874, and November 7 a contract was signed by the mayor for the city, attested by the clerk, and by the proper officers of the company. This contract provided for a supply of water for all city purposes, in pursuance of the authority conferred by their charter to supply the public, and further, that connections with the water mains should be made on all the streets for hydrants, public buildings, markets, fountains, etc.; such connections to be designated by the city. The grades of all streets, lanes and alleys where water mains should be laid were to be furnished by the city, which should grant the right of way through all such streets, lanes and alleys. For furnishing water for city purposes the company was to be paid $6,000 annually. The contract was to continue ten years, and then for another ten years, with some change of compensation for fire hydrants. The company then proceeded with the construction of its works, and completed the same at a cost of about $185,000. The city made annual appropriations to pay for the water furnished for city purposes up until 1893, when further payment was refused, on the ground the original contract was invalid for want of proper ordinance authorizing the same.

On September 21, 1894, city councils passed an ordinance that $75,000 of city bonds should be issued for the purpose of constructing new municipal waterworks. Notice was then given of an election for the proposed increase of debt, in which it was stated the assessed valuation of the city was $2,030,000, and the existing debt $61,500; that the proposed increase of

debt for the construction of the waterworks was three and seven tenths per cent. The majority of the voters favored the increase of debt; councils then on March 11, 1895, adopted this ordinance: " That a system of waterworks be built and erected for the use of the city of Meadville for the purpose of supplying said city with water, and such persons and corporations as may desire the same ; to be made and completed in accordance with the plans to be provided by the civil engineer of the city."

The city engineer prepared plans for the new works, embracing about twenty-two miles of mains, to be put down on the streets and alleys of the city, reaching for the most part all the consumers of water supplied by the old company ; further, the city entered into a contract with Chandley Brothers & Company for the construction of the works in accordance with the plans of the city engineer, the price to be paid being $104,723, not including cost of land for pumping station, water-wells, reservoir, or right of way through private land. These plaintiffs then filed this bill to restrain the city from carrying out the contract ; they averring in said bill: 1. Illegality and irregularity of the election for increase of debt. 2. That the proposed increase of debt exceeded the constitutional limit of municipal indebtedness. 3. That the construction of municipal works, in view of the contract obligations of the city with the Meadville Water Company, was without authority of law ; and even if the power existed, the proposed exercise of it was a gross abuse of the power. The city filed answer, denying all the material averments of plaintiff's bill, and conclusions of law therefrom, and further affirmatively alleging the original contract was invalid, not being authorized by proper ordinance, and therefore was not binding upon the city. By agreement of the parties, Theodore Lamb, Esq., was appointed referee, to report facts and conclusions of law. He made report, and on the facts concludes : 1. That although there was no formal ordinance authorizing the contract, the city, by subsequent distinct, unequivocal acts, running through years, had ratified it, and was legally bound by its terms. 2. The irregularities attending the election on the question of increase of indebtedness were not sufficiently grave to invalidate it. 3. That the proposed increase of indebtedness by the contract with Chandley Brothers & Co., for construction, added to the existing bonded indebtedness of the city, did exceed seven per cent of the taxable property, and was therefore

void, being in violation of the constitution. 4. That the city has full power to make the contract, if the debt had not exceeded the constitutional limit. It is therefore suggested, an injunction issue to restrain the city from further proceeding with the construction of the municipal works. Both parties have filed exceptions to this decree. We fully concur in the referee's findings of facts, and approve all his conclusions of law except the tenth. This disposes of all the exceptions on both sides but the plaintiff's fifth exception, which is to the referee's conclusion that the city had power to make the new contract, notwithstanding its liability on the old one. It is perhaps needless to say the question raised is not altogether free from difficulty, and we might avoid passing upon it in this particular case; but the same question is already before us in one other case, and like circumstances existing in perhaps a hundred others, involving millions of property, may raise it in the future; therefore, our plain duty is to pass upon it here. We have had the aid of full and able argument on each side; the full bench has given it prolonged and complete consideration in all its aspects, and, as a result, this judgment is fully concurred in by every member of the Court.

As before noted, the question is raised by the referee's 10th conclusion of law, as follows:

"10. In the opinion of the referee, the right of the city of Meadville to build waterworks is one governed by legal considerations alone. Has the city power to do so? If so, the works may be constructed, and no equitable considerations can stay her hands. When the Meadville Water Company constructed its plant, it did so with knowledge that the city had the right to construct waterworks at any time; and it was bound to know that the city had the right to reconsider its determination not to do so at any time. The building of other works may, and undoubtedly will, seriously affect the present company, but the loss that may occur is one for which the law allows no compensation. It seems to me that the case of Lehigh Water Co.'s Appeal, 102 Pa. 515, and Millvale Boro., 162 Pa. 374, fully settle this doctrine."

The general borough act of 1851, under which Meadville first became a municipality, gave authority to boroughs to "light the streets, to provide a supply of water for the use of the inhabitants, . . . . to make all needful regulations for the

protection of pipes, lamps, reservoirs and other construction or apparatus, and to prevent the waste of water so supplied."

This clause was re-enacted in the city's special charter of 1866, with the addition of authority to supply itself with water for fire purposes. And so the authority continued, as the referee finds, down to August 13, 1891, when, by proper official action, it accepted the provisions of the act of assembly of May 23, 1874, providing for the organization and government of cities of the third class, in which class it took its appropriate place. That act authorizes cities of this class in their corporate capacity to " supply with water the city and such persons, partnerships and corporations therein as may desire the same, at such prices as may be agreed upon, and for that purpose have at all times the unrestricted right to make, erect and maintain all proper water works, machinery, buildings, cisterns, reservoirs, pipes and conduits for the raising, reception, conveyance and distribution of water, or to make contracts with, and authorize, any person, company or association to erect all proper water works, machinery, buildings, cisterns, reservoirs, pipes and conduits for the raising, reception, conveyance and distribution of water, and give such persons, company or association the exclusive privilege of furnishing water as aforesaid for any length of time not exceeding ten years."

The 50th section of the same act, in order to effect the powers thus given more fully, authorizes the purchase by the city at such price as may be agreed upon, the rights, privileges and franchises of any water company then in operation, and thereafter to exercise all the powers of the company so purchased. The 53d section confers on the city the right of eminent domain, and authorizes it to appropriate such land and property as may be required in the construction of waterworks.

The corporation act of April 29, 1874, gives to water companies the right to introduce into boroughs and cities, wherever they may be located, a sufficient supply of pure water, and when completed, its right in the locality covered by its works is exclusive, until, during a period of five years, the company has divided among its stockholders a dividend equal to eight per cent upon its capital stock. Then it is made lawful, after twenty years from the introduction of the water, for the municipality to become the owners of the waterworks, by paying the net cost of erecting and maintaining the same, with interest thereon at

the rate of ten per cent per annum, deducting from such interest, however, any. dividends theretofore declared.

Both acts were passed at the same session of the legislature, within four weeks of each other. They are very elaborate, apparently making provision for every contingency that occurred to the legislative mind at the date of their passage, and clearly, from the proximity in dates of their discussion and enactment, no provision in the later act was intended to repeal the first, directly or by repugnancy: In Smith v. People, 47 N. Y. 330, is this apt language applicable to such facts:

" Statutes enacted at the same session of the legislature should receive a construction, if possible, which will give effect to each. They are within the reason of the rule governing the construction of statutes in pari materia. Each is supposed to speak the mind of the same legislature, and the words used in each should be qualified and restricted, if necessary, in their construction and effect, so as to give validity and effect to every other act passed at the same session."

Here, then, plainly, were two distinct methods by which the municipality could supply its citizens with water; by putting either method in operation, the same end was accomplished, that is, the supplying of the citizens with water; there is no repugnancy in the provisions of the two acts, on the assumption that one or the other alone will be adopted to effect the purpose; there will be a decided repugnancy in their operation, if both be put at work at the same time to effect that purpose. If anything be manifest, it is, that if two water mains be laid side by side on the same street, equally accessible to the householder on each side, conveying double the quantity needed, with double sets of hydrants, pumping stations, offices, salaries and expenses, one or the other must be abandoned. No community will pay double for any article of necessity or luxury. If the property holder must, by compulsory taxation, support the municipal system, he will not voluntarily support the private corporation system; such a conflict of interests will inevitably bankrupt the system which depends on the voluntary patronage of the public. We hesitate to assume, every court is bound to hesitate long before assuming, the legislature intends, by grants to distinct corporations for public purposes, there shall arise such conflict in the exercise of the franchises as will result in the practical destruction of property of any citizen without

compensation. It is a cardinal rule of construction between older and younger grants of franchises, the sovereign does not intend the younger shall infringe on the older ; but to assume these franchises can be in existence and in operation at the same time, is to assume the commonwealth has granted precisely the same thing to the municipality that it had already granted to the water company; for in a business view, the contemporaneous exercise of the franchises is impossible. Therefore, in approaching the consideration of the words of the acts, the judicial mind at the start must incline against the conclusion of the learned referee.

Consider, then, the words of clause 9 of the 20th section of the act of May 23, 1874 ; The city is " to have at all times the exclusive right to supply itself with water, and such persons, partnerships and corporations at such prices as may be agreed upon ;" this is the grant by the commonwealth of the power or authority to its creature, the municipality, which without the grant was helpless in this purely commercial matter ; it was not an exercise of governmental power which would be implied from the mere creation of a municipality. In Savings Fund Society v. Phila., 31 Pa. 185, this court, in discussing this question, adopted this language : " As a local sovereign it (the city) had no authority to enter into the business of manufacturing and selling gas, for its sovereignty did not extend to such subjects any more than it did to almost any other manufacture. It is true, a municipal corporation is not bound by any engagement which prevents a discharge of the duties imposed upon it by its organic law, for the plain reason that such engagements are contrary to law. But when such a corporation engages in things not public in their nature, it acts as a private individual, no longer legislates but contracts, and is as much bound by its engagements as is a natural person. The distinction between public duties and private business is wide and obvious."

Therefore, the grant specifically of the means by which the power may be executed is given ; it shall have the unrestricted right to erect and maintain proper waterworks, machinery, buildings and reservoirs to convey and distribute the water. First, is the exclusive power to supply itself, and then the powers incident to and necessary to make the first power effective. To have granted the right only to supply itself would

have left a doubtful implication as to whether it might erect its own works, or should buy its supply from corporation dealers in water. But after the grant of the right to supply, and the one method of exercising the right, it occurs to the legislative mind, as all such grants are strictly construed, and this prescribes but one method, the city may be shut up to that one; the legislature, only twenty-four days before, had enacted that water companies might be authorized to supply water, and should have power to erect and maintain all works and machinery necessary and proper for raising and introducing into the town, borough, city or district where they may be located a sufficient supply of pure water. Here was another kind of corporation than municipal empowered to convey and distribute water to cities and towns; the city may not desire to erect and manage its own waterworks; may prefer to purchase water; then comes the grant of a second method of supplying itself with water: " Or to make contracts with and authorize any persons, company or association " to convey and distribute the water for any length of time not exceeding ten years. The primary grant was the power to supply; the secondary one, the grant of two distinct methods of exercising the power, either of which might be adopted. There was no grant of power to put both methods in operation at the same time; for once the power has been exercised to supply the city by contract through another creature of the same sovereign, then the municipal function has passed from the city, and must be performed by the other contracting party, which last has rights and obligations imposed upon it by law, as clearly defined and as capable of enforcement as those of the city. As long as the city keeps within the scope of its powers to bargain, it must stand by the bargain the same as an individual. We do not doubt the legislature could, by the act of May 23, 1874, have granted to the city the right to change back and forth from one method of supply to the other, as whim or interest might dictate; it is sufficient to say, it did not do so. This view of the scope of legislation on this subject accords with the known facts. A municipality, in its beginnings, is perhaps not financially strong, or its debt may approach the constitutional limit so closely that it cannot borrow; nevertheless, the low state of its financial condition does not render less urgent the necessity of a water supply; it can obtain it in but one way, by contract with those who have the money and are willing to invest their

private capital in the construction of waterworks; the legislature knew capital would not be invested in such an enterprise if in the future it were liable to confiscation by competition with a public enterprise operated from a municipal treasury, capable of replenishment from the pocket of the taxpayer. That fact suggested clause 7 of the corporation act; the municipality will not be forever poor; the time will come when it will be of financial ability to own and operate its own works; the very fact of having a supply of water on an investment of private capital, has tended to stimulate its growth, and to largely appreciate the value of taxable property; therefore says the legislature:

"It shall be lawful at any time after twenty years from the introduction of water or gas, as the case may be, into any place as aforesaid, for the town, borough, city or district in which the said company shall be located, to become the owners of said works, and the property of said company, by paying therefor the net cost of erecting and maintaining the same with interest thereon at the rate of ten per centum per annum, deducting from said interest all dividends theretofore declared: Provided, That nothing in this section contained shall authorize a company incorporated under the provisions of this act to construct gas or water works within the limits of any municipality, when gas or water works shall have been constructed by said municipality, without the lawful consent of the corporate authorities thereof: And provided further, That the court of common pleas of the proper county shall have jurisdiction and power upon the bill or petition of any citizen using the gas or water of any of said companies to hear, inquire and determine as to the charges thereof for gas or water so furnished, and to decree that the said bill be dismissed, or that the charges shall be decreased, as to the said court may seem just and equitable, and to enforce obedience to their decrees by the usual process."

It is correct, as argued by defendants, that this clause is repealed by the act of May 23, 1889; but as between these contracting parties whose rights vested at the date of the contract, the subsequent act could not divest them. If the act of 1874 had provided the works should be taken at their actual value, and then had enacted a merely different form of procedure to ascertain the value, the contract right would not perhaps have been affected by the act of 1889. But here the value is a fixed

one, the net cost with interest at ten per cent per annum, deducting dividends. The result is one of computation; there is no room for discretion or judgment which may be exercised under one form of proceeding as well as another. Both the contracting parties must be conclusively presumed to have had in view the law which empowered them to contract, and which became part of the contract. At the end of twenty years the defendants have a right to take the works at a price fixed by the law, and that is one of computation. True, as to the city, the taking of the works is only permissive; it is not bound to take them, while, if the city demands, plaintiffs are bound to surrender them. But if the city does not choose to become the owner of the works in the mode pointed out in the act, it has no power to destroy their value by duplicating them at the expense of the taxpayers.

As to the question raised by clause three, we decline to discuss it, as it has no bearing on the one before us. It will be time enough for that, when two private corporations seek to exercise their franchise in the city at the same time.

The argument that by this construction the citizens are in the power of a private corporation having the sole authority to determine the price, quantity and quality of the water supply is completely answered by the second proviso to clause 7, and subsequent legislation regulating the conduct of water companies: Brymer v. Butler Co., 172 Pa. 489; Com. v. Russell, 172 Pa. 506. The two cases cited by the referee as sustaining his decision, Lehigh Water Company's Appeal, 102 Pa. 515, and Howard's Appeal, 162 Pa. 374, are in apparent conflict with this judgment, and the language of the court to some extent in both cases would lead to a different conclusion than the one to which we have come. The first case on its facts, however, is not the same as this. By a supplement to the act incorporating the borough of Easton, March 12, 1867, the town council was authorized to construct and provide waterworks, and elect water commissioners; then, by another supplement, April 15, of the same year, the borough was authorized to construct or purchase waterworks. In this case the municipality had by these special acts, with the consent of the majority of voters, the authority to erect its own waterworks, and this special legislation constituted part of its corporate power, antedating the present constitution and the acts of 1874; by the schedule to the constitution, it is declared: " All laws in force in this common-

wealth at the time of the adoption of this constitution, not inconsistent therewith, and all rights, actions, prosecutions and contracts shall continue as if this constitution had not been adopted." It was held the authority conferred by the special acts of 1867 was not taken away by the act of 1874, giving the exclusive right to the water company. When it is noticed, the controversy turned on the repeal or non-repeal of the special acts, and whether the borough had by inaction under the special law lost its right to construct municipal waterworks, the distinction between that case and the one before us is obvious. Without adverting to what was said by Justice PAXSON in delivering the opinion, and considering only what was decided, there is no conflict between that case and this.

In Howard's Appeal, supra, it was assumed by all parties in the court below, and by the learned judge of that court, that the authority of the municipality to violate its contract existed. On the appeal, the point pressed in this case was scarcely touched upon in the argument. With the greatest reluctance on the part of every member of this court, the decree of the court below was affirmed; that reluctance is expressed in no doubtful language by our Brother GREEN, who delivered the opinion; in fact, it was assumed by all counsel and both courts, that Lehigh Water Company's Appeal, supra, was decisive of the contention on that point, and the case went against the water company on other grounds. It was a mistake. We now are glad of the opportunity for correction, especially so, because the example of Millvale borough seems to have misled other municipal corporations to adopt the same course of action: Luzerne Water Company v. Toby Creek Water Company, 148 Pa. 568, also cited by defendants, was a controversy between two rival companies, and the power of the municipality did not come in question.

Therefore, in this case, we are of opinion, for the reasons given, the 5th exception to the learned referee's 10th conclusion of law should be sustained, and it is decreed accordingly. Further, it is directed that the said defendants, and each and every of them, be restrained by injunction from entering into contract for the construction of a waterworks in accordance with the plans prepared by the city civil engineer as aforesaid. It is further ordered that defendants pay the costs of this proceeding.