MITCHELL *et al.* v. TULSA WATER, LIGHT, HEAT & POWER CO.

No. 912, Ind. T.   Opinion Filed May 15, 1908.

(95 Pac. 961.)

1.   WATERS AND WATER COURSES—Municipal Corporations—Ordinances—Construction—Grant of Franchise.   Where the language of an ordinance granting to a waterworks company a franchise is ambiguous and reasonably susceptible of two constructions, the construction that is more favorable to the public should be adopted.

2.   SAME—Power to Make Improvements—Water Supply.   Act Congress May 19, 1902, chapter 816, 32 Stat. 200, authorizing cities and towns in the Indian Territory, having a population of 2,000 or over, to issue bonds and borrow money for the construction of waterworks, is not in conflict with and does not repeal Mansf. Dig. Ark. chapter 29, section 775, authorizing municipal corporations to make contracts for water supply.

3.   SAME—Construction of Ordinance Granting Franchise.   An ordinance which grants to a waterworks company the exclusive right to construct, maintain, and operate waterworks in or near a certain city for the purpose of supplying the streets, lanes, alleys, squares, and public places of said city and for extinguishing fires therein, and for such purposes grants to the waterworks company the use of all the streets, lanes, alleys, squares, and public places of the city, or so much thereof as may be necessary in the construction and operation of its waterworks, does not grant to the waterworks company the exclusive right to use the streets, lanes, alleys, squares, and public places of the city in constructing and operating a waterworks system for the purpose of supplying the inhabitants of the city and for domestic and industrial purposes.

4.   SAME.   The granting by a city to a waterworks company of the exclusive right to use its streets, lanes, alleys, squares, and public places, to construct and operate a waterworks for supplying the streets, lanes, alleys, squares, and public places with water, and for extinguishing fires therein, precludes the city from using its streets, lanes, alleys, squares and public places for constructing and maintaining a system of waterworks for such purposes, and

Mitchell *et al.* v. Tulsa Water, Light, Heat & Power Co.

from granting to other persons, firms, or corporations such right, but does not preclude the city from itself constructing and maintaining a system of waterworks, and in doing so from using the streets, lanes, alleys, squares, and public places of the city, for the purpose of supplying its inhabitants and for domestic and industrial purposes.

(Syllabus by the Court.)

*Error from the United States Court for the Western District of Indian Territory; Wm. R. Lawrence, Judge.*

Action by the Tulsa Water, Light, Heat & Power Company against John O. Mitchell and others to enjoin defendants from constructing and maintaining a system of waterworks to be owned and operated by the city of Tulsa, from submitting the question to the city, from issuing waterworks bonds, and from supplying the inhabitants of that city or using for itself water from any system of waterworks constructed by the city. Judgment for plaintiff, and defendants appealed to the United States Court of Appeals of Indian Territory, whence the cause came to the Supreme Court of Oklahoma under the enabling act. Reversed and remanded.

On the 27th day of July, 1906, plaintiff below (appellee here) filed its complaint in equity against the defendants below (appellants here) in the United States court for the Western district of the Indian Territory at Tulsa. Upon application by plaintiff a temporary injunction was granted in the action by the Honorable Wm. R. Lawrence, judge of the United States court for said district. On the 10th day of October, 1906, plaintiff filed its amended complaint, in which it states: That it is a corporation organized and existing under and by virtue of the laws of the United States in force in the Indian Territory. That on the 28th day of September, 1903, the common council of the city of Tulsa passed an ordinance which was duly approved and became effective. That said ordinance was enacted in accordance with the law in such cases provided, and granted a franchise and contract to one George G. Bayne, of Joplin, Mo., his heirs, associates, and assigns, for the

purpose of supplying the city of Tulsa with water. That said ordinance was entitled:

"To provide for supplying with water the streets, lanes, alleys, squares and public places in the city of Tulsa, Ind. Ter., and for the contracting with Geo. G. Bayne, of Joplin, Mo., his heirs, associates or assigns, for the purpose of supplying with water such streets, lanes, alleys, squares and public places."

That section 1 provides:

"The city of Tulsa, Ind. Ter., hereby contracts with Geo. G. Bayne, of Joplin, Mo., his heirs, associates or assigns, for the supplying with water the streets, lanes, alleys, squares and public places in said city, upon the terms and conditions contained in the following sections of this ordinance."

That section 2 provides:

"This contract shall remain and be in full force for the term of thirty years, from and after date of passage of this ordinance. During said full term of thirty years (except sooner purchased by the city as herein provided) the said Geo. G. Bayne, his heirs, associates or assigns, shall have the exclusive right to maintain and operate waterworks for supplying said streets, lanes, alleys, squares and public places with water and for the extinguishing of fires in said city. Said water to be supplied from wells adjacent to the Arkansas river to supply the domestic use and in an emergency from the Arkansas river. * * * "

That section 3 provides:

"That the said Geo. G. Bayne, his heirs, associates or assigns, be and is hereby authorized to establish, construct, maintain and operate waterworks in, or adjacent to said city of Tulsa, and to use any or all of the streets, lanes alleys, or public grounds of said city, or so much thereof as may be necessary in which to lay water-pipes and maintain all the appliances necessary or proper for the supplying of water. * * * "

A copy of said ordinance is attached to plaintiff's complaint as an exhibit. The complaint alleges that, before any work was begun under said ordinance, Geo. G. Bayne sold, transferred, and assigned all his interest therein to plaintiff, and that it had complied with the terms of said ordinance to the extent of constructing a complete system of waterworks for the city of Tulsa, and

that said system of waterworks had been in operation for a period of nearly two years, and that in constructing, operating, and maintaining said waterworks it had expended thousands of dollars, and that it was at the time of the institution of this suit supplying said city and its inhabitants with all the water needed for the purposes prescribed in said ordinance. And plaintiff further alleges that it was preparing to issue bonds for the purpose of extending said water plant and for the maintenance of its present waterworks system. It further alleges that the city of Tulsa, through its council, had passed a resolution instructing its attorney to go to Muskogee and consult with the judge of the court on the necessity of taking a census prior to the issuance of waterworks bonds; that the council of said city of Tulsa, on July 2, 1906, by resolution, instructed its attorney to take all necessary steps to procure the issuance of $100,000 of waterworks bonds for the construction and completion of a water system for the city of Tulsa, and that the council of the city of Tulsa was, at the time of the institution of this suit, proceeding to prepare and issue bonds for the purpose of building a waterworks system for the city of Tulsa; that plaintiff, by such acts of the city council of the city of Tulsa, would be divested of its rights acquired in the construction and maintenance of its water system under said ordinance. It prayed for an injunction against the defendants enjoining them from attempting to construct and maintain a system of waterworks, to be owned and operated by the city of Tulsa, from submitting said question to the city of Tulsa, and from issuing waterworks bonds in the sum of $100,000 or any other sum for the construction of a system of waterworks for the city of Tulsa, and from supplying to the inhabitants of said city or using for itself water from any system of waterworks constructed by the said city of Tulsa. Plaintiff further alleges four other causes of action in its complaint.

Upon final hearing of the case, defendants filed a demurrer to each and all of plaintiff's alleged causes of action, and the court sustained the demurrer to all said causes of action except

the first; but, as to the first alleged cause of action, it overruled defendants' demurrer, to which defendants excepted and refused to plead further. Whereupon the court rendered judgment in favor of plaintiff and made perpetual the temporary injunction theretofore granted by the Honorable Wm. R. Lawrence, judge of the United States court for said district, by which defendants were perpetually enjoined from attempting to construct and maintain a system of waterworks to be owned and operated by the city of Tulsa, from submitting said question to the inhabitants of the city of Tulsa, and from issuing waterworks bonds in the sum of $100,000, or any other sum for the construction of a system of waterworks for said city of Tulsa, and from supplying the inhabitants of said city with water, and from using for themselves water from any system of waterworks constructed by the said city of Tulsa. From this judgment of the court, defendants appealed to the United States Court of Appeals of the Indian Territory, where the case was pending at the time of the admission of the state into the Union, and it comes to this court under provisions of the enabling act.

*John E. Lydecker* and *Biddison, Campbell & Eagleton* for appellants.

*Hutchins, Murphey & German*, for appellee.

Hayes, J. (after stating the facts as above). Defendants make six assignments of error, but they may be reduced to one assignment, to the effect that the court erred in overruling their demurrer to plaintiff's first cause of action, and in rendering judgment for plaintiff. The contentions of defendants may be divided into three propositions, as follows:

First. That the Tulsa Water, Light, Heat & Power Company has no exclusive franchise by which is granted the exclusive right to use the streets, alleys, etc., of the city of Tulsa, for the purpose of maintaining and operating a system of waterworks.

Second. That if the water company has an exclusive franchise to use the streets, alleys, etc., of the city of Tulsa in main-

taining and operating a system of waterworks such right is limited to maintaining a system of waterworks by which water is supplied to the city of Tulsa from wells adjacent to the Arkansas river, and in cases of an emergency from the Arkansas river, and does not preclude the city from 'granting to other persons, firms, or corporations the right to maintain and operate a system of waterworks in the city of Tulsa and in using the streets, alleys, etc., of the city of Tulsa for such purpose so long as said other persons, firms, or corporations obtain their water from other places than wells adjacent to the Arkansas river, and in cases of emergency from the Arkansas river, and that the city of Tulsa may construct, operate, and own its own waterworks and use the streets, alleys, etc., of the city for such purpose so long as it obtains its water supply from other places than from wells adjacent to the Arkansas river, and in cases of an emergency from the Arkansas river.

Third. That, if the water company has an exclusive franchise of any character, such franchise gives to the water company the exclusive right to maintain and operate waterworks only for the purpose of supplying the streets, lanes, alleys, squares, and public places, and for extinguishing fires in the city of Tulsa, and does not preclude the city from constructing and operating its own waterworks or from granting such right to other persons, firms, or corporations for the purpose of supplying the inhabitants of the city of Tulsa and for mechanical and industrial purposes.

Plaintiff, on the other hand, contends that it has an exclusive franchise by which it is granted by the city of Tulsa the exclusive right to use and occupy the streets, lanes, alleys, squares, and public places of the city for the purpose of constructing, maintaining and operating its waterworks system, for all purposes, and that such franchise has been accepted by it, and that it has performed the terms of same, and that thereby the franchise has became a contract between it and the city of Tulsa, which cannot be impaired by the city of Tulsa, and that to permit the city of Tulsa to use the streets, alleys, etc., of the city in constructing, maintaining, and operating a system of waterworks with which to

supply itself and its inhabitants with water would impair plaintiff's contract.

It is a well-settled rule of the Supreme Court of the United States that a grant of a franchise after performance by the grantee is a contract protected by the Constitution of the United States against state legislation to impair it, and that legislation of municipal bodies created by the legislative bodies of the states for the purpose of local legislation is legislation by the state. *New Orleans Gaslight Co. v. Louisiana Light, etc., Co.,* 115 U. S. 650, 6 Sup. Ct. 252, 29 L. Ed. 516; *Louisville Gas Co. v. Citizens' Gaslight Co.,* 115 U. S. 683, 6 Sup. Ct. 265, 29 L. Ed. 510; *Walla Walla v. Walla Walla Water Co.,* 172 U. S. 1, 19 Sup. Ct. 77, 43 L. Ed. 341.

If plaintiff's franchise grants to it the exclusive right to use the streets, lanes, alleys, squares, and public places in the city of Tulsa, for the purpose of maintaining and operating a system of waterworks for all purposes, since it is admitted that plaintiff has accepted the franchise and has performed the conditions thereof, the judgment of the trial court was not error. But has the Tulsa Water, Light, Heat & Power Company such an exclusive franchise? The ordinance by which the assignor of plaintiff was granted a franchise was enacted by the city council of Tulsa on the 28th day of September, 1904. There was in force in the Indian Territory at that time section 755 of Mansfield's Digest of the Statutes of Arkansas (Ann. St. Ind. T. 1899, § 525), which reads as follows:

"For the purpose of providing water, gas or street railroads, the mayor and council may contract with any person or company to construct and operate the same and may grant to such person or company for the time which may be agreed upon the exclusive privilege of using the streets and alleys of such city for such purpose or purposes."

There was also in force in the Indian Territory at said time an act of Congress of May 19, 1902 (32 Stat. 200, c. 816), which authorized cities and towns in the Indian Territory having a pop-

ulation of 2,000 or over to issue bonds and borrow money for the construction of waterworks.

It was held by the United States Court of Appeals of the Indian Territory, in *Incorporated Town of Tahlequah v. Guinn et al.,* 5 Ind. T. 497, 82 S. W. 886, that the act of Congress of May, 1902, was not in conflict with and did not repeal said section 755 of Mansfield's Digest. The city of Tulsa at the time of granting the franchise in controversy and at the time of the institution of this suit had the power to build and construct its own waterworks for the purpose of supplying the city and its inhabitants with water unless by some contract it had precluded itself from doing so. Plaintiff contends that the case of *Incorporated Town of Tahlequah et al. v. Guinn et al., supra,* is directly in point in this case and announces the correct rule of law. The language of the ordinance involved in that case in some respects is very similar and almost identical with the language of the ordinance in the case at bar, but in other respects it is materially dissimilar, but the construction of the ordinance as to whether it attempted to give an exclusive franchise was not involved in that case. It appears to have been conceded by the town of Tahlequah, who attacked the ordinance in that case, that the language of the ordinance was sufficient to grant to the water company the exclusive right to use the streets and alleys of the town of Tahlequah for the purpose of maintaining and operating a system of waterworks; but its contention was that such ordinance was illegal and void, and that the power of the town to grant such franchise, if it existed at all, existed under section 755 of Mansfield's Digest of the Statutes of Arkansas, and that said section had been repealed by the act of Congress of May 19, 1902, prior to the passage of the ordinance granting the franchise. The court decided against the town on all of its contentions, but the construction of the ordinance was not involved in the case.

If the construction of the ordinance had been involved in that case, the decision of the court therein could not be very persuasive on this court, for the reason that there is a very material

difference in the language of the section of the ordinance in that case which grants to the water company an exclusive right from the language of the corresponding section of the ordinance in the case at bar. Section 2 of the ordinance in that case provides that the water company "shall have the exclusive right to maintain and operate water works, for supplying the said streets, lanes, alleys, and public places with water and for the extinguishment of fires in said town, and for *domestic, manufacturing and industrial* uses in said town, * * *" (The italics are ours.) Whereas, the corresponding section of the ordinance in this case provides that the water company "shall have the exclusive right to maintain and operate waterworks for supplying said streets, lanes, alleys, squares, and public places with water and for the extinguishing of fires in said city," but it does not provide that the water company shall have the exclusive right to maintain and operate waterworks for domestic, manufacturing, and industrial uses, or for supplying the inhabitants of said city of Tulsa.

Defendants insist that the effect of section 2 of said ordinance is to grant to plaintiff the exclusive right to furnish the city of Tulsa with water, for supplying the streets, lanes, alleys, squares, and public places of said city, and for extinguishing fires in the city, and that the city of Tulsa had no authority to make such a contract; that the only exclusive privilege it was authorized to grant under the law was to grant the exclusive use of its streets, lanes, alleys, squares, and public places to plaintiff for the purpose of constructing waterworks; and that therefore the grant is void. We do not agree with defendants in this construction of the ordinance. The language of section 2 is specific to the effect that the exclusive right is not, as contended by defendants, to furnish water to the city, but to maintain and operate waterworks for supplying the streets, lanes, alleys, and public places of the city, and for extinguishing fires therein. Section 3 gives to plaintiff the right to use any and all of the streets, lanes, alleys, and public grounds of the city, or so much of same as may be

necessary to lay water pipes and maintain all the appliances necessary in the construction and operation of its waterworks.

In construing this contract, as in construing any other contract, the primary object of the court should be to accomplish the intention of the parties, and a liberal and fair construction should be given to the words used by the parties in the contract considered singly, and in connection with the general subject-matter of the contract. Sections 2 and 3 of the ordinance are the only sections therein by which it is attempted to make any grant from the city to the waterworks company, and taking into consideration the general purposes of this franchise as expressed in the title of the ordinance, which was "To provide for supplying with water the streets, lanes, alleys, squares, and public places in the city of Tulsa," we think sections 2 and 3 of the ordinance intended by the parties to grant and do grant to the water company the right to maintain and operate waterworks for supplying the streets, lanes, alleys, squares, and public places of the city of Tulsa, and in doing so to use the lanes, alleys, streets, squares, and public places of said city in so far as necessary, and make such right exclusive. By section 6 of the ordinance, the city of Tulsa agrees to rent from the grantee, during the full term of 30 years, 65 fire hydrants, and stipulates an annual rental for the same, and it is provided by the same section that such hydrants may be used by the city for flushing of sewers as well as for extinguishing fires. By section 8 it is provided that additional hydrants shall be erected by the grantee whenever directed so to do by resolution of the city council. Section 11 provides that the city of Tulsa may have the right to purchase the waterworks at the expiration of 10 years from the acceptance of the franchise, and provides how the value of the same may be arrived at. Section 13 prescribes the rate at which water shall be furnished by the grantee to the consumers in the city. Section 17 provides that, when the city of Tulsa acquires a population exceeding 10,000 inhabitants, the rates and charges as provided by the ordinance shall be reduced 10 per cent.; but no section of the ordinance provides that the city

shall purchase all of its water from the grantee, nor does it attempt to bind its inhabitants to do so.

The whole text of the ordinance considered shows it was the intention of the parties, and such intention has been fairly expressed by the terms of the ordinance, that the grantee should have the exclusive right to maintain and operate waterworks for supplying the streets, lanes, alleys, squares, and public places of the city of Tulsa, with water, and for the extinguishing of fires in the city, and that as an inducement, or as a part of the consideration for said contract, the grantee agreed to furnish water to the inhabitants of the city at a rate stipulated therein, and the city agreed to rent and did rent a certain number of hydrants as stipulated, with the privilege of using other hydrants when it deemed it necessary to use them, and reserved to itself the right to purchase the waterworks; but there is nothing in the contract that binds or indicates that it was the intention that the city should be bound to take and use any other hydrants than those directly provided for in the contract, or that the city should be bound to buy the waterworks of the grantee in the event the city should decide to construct and operate waterworks for any purpose. There is nothing in the ordinance that grants to the water company an exclusive right to use the streets, lanes, alleys, and public grounds of the city in constructing and operating a waterworks system for the purpose of supplying the inhabitants of the city for industrial and domestic purposes. The language of the ordinance limits the exclusive right to maintain and operate a waterworks system for supplying the streets, lanes, alleys, squares, and public places with water and for the extinguishing of fires in the city. It may be contended that the exclusive right to use the streets, lanes, etc., for the construction and operation of the waterworks to supply the inhabitants was intended by the parties, and if not directly expressed in the ordinance it was inadvertently omitted; but no rule is better settled by the courts than the principle that all grants which are against the state must be clearly defined and not left to inference or presumption, and that if an

ordinance is silent about any power it does not exist, and if a reasonable doubt on the fair reading of such an instrument arises as to the proper interpretation to be given to it this doubt is to be resolved in favor of the public. *The Binghampton Bridge Co.*, 3 Wall. (U. S.) 51, 18 L. Ed. 137; *Helena Waterworks Co. v. Helena*, 195 U. S. 383, 25 Sup. Ct. 40, 49 L. Ed. 245; *Stein v. Bienville Water Supply Co.*, 141 U. S. 67, 11 Sup. Ct. 892, 35 L. Ed. 622; *Bartram v. Central Turnpike Co. et al.*, 25 Cal. 283.

In *Covington & Lexington Turnpike Road Co. v. Sandford*, 164 U. S. 578, 17 Sup. Ct. 198, 41 L. Ed. 560, the court said:

"It is settled law that in grants by the public nothing passes merely by implication, and if a contract with a state, relating to the exercise of franchises, is susceptible of two meanings, 'the one restricting and the other extending the powers of a corporation, that construction is to be adopted which works the least harm to the state.'"

There can be no contention in this case that the extent of the grant by the city of Tulsa is expressed in ambiguous terms, and that it is susceptible of the construction that no exclusive grant was given to the waterworks company to use the streets, alleys, and public grounds of the city for the purpose of supplying the inhabitants of the city for domestic and industrial purposes, and following the rule quoted from *Covington & Lexington Turnpike Road Co. v. Sandford, supra,* this construction, being the one that least harms the city, should be adopted by this court.

It may be urged that the exclusive right to use the streets of the city of Tulsa for the construction and operation of waterworks for the purpose of supplying the inhabitants and for domestic and industrial purposes was intended by the parties, but inadvertently omitted. Such a right is one of great value, both for the grantee to receive and for the city to grant, and it may be argued with as great a show of reason that, if it was intended that said ordinance should convey so great and valuable a right, the grantee would have seen that the same was specifically granted by the terms of the ordinance, and not relied upon its being granted

by implication. Under the well-settled rule of construction governing the construction of contracts of the nature of the one under consideration, the court should no more read into the contract that which may have been inadvertently omitted than it should read out of the contract that with which one of the parties may have become dissatisfied. Under the franchise in this case, plaintiff has the exclusive use of the streets, alleys, and public grounds of the city of Tulsa to construct and operate waterworks for the purpose of supplying the streets, lanes, alleys, squares, and public grounds of the said city of Tulsa with water and for extinguishing fires in the city, and it has the right to use said streets and alleys for the purpose of construction and operation of the waterworks to supply the inhabitants of said city; but such last right is not exclusive, and the city of Tulsa may use the streets, alleys, and public grounds of the city in the construction and operation of a waterworks plant for the purpose of supplying its inhabitants with water and for the purpose of supplying water for domestic and industrial purposes, or it may grant such right to other persons, firms, or corporations.

Defendants, relying upon *Stein v. Bienville Water Supply Co., supra,* insist that whatever exclusive privilege is granted by the ordinance in this case to plaintiff is limited by that portion of the language of section 2 of the ordinance which reads, "said water to be supplied from wells adjacent to the Arkansas river to supply the domestic use and in an emergency from the Arkansas river * * *"; that the effect of such language is to limit the exclusive privilege of plaintiff to use the streets, alleys, and public grounds of the city of Tulsa to the construction, operation, and maintenance of a water system by which water is supplied to the city of Tulsa from wells adjacent to the Arkansas river, and in an emergency from the Arkansas river, and does not give it the exclusive right to use said streets, alleys, etc., in the construction, operation, and maintenance of a water system by which water is supplied from any other source. In the *Bienville Water Supply Case, supra,* plaintiff's testator held a franchise by which he was

given the exclusive privilege of supplying the inhabitants of Mobile for a period of 20 years from the date of the franchise with water from Three-Mile creek. The water system had been constructed and placed in operation under said franchise. Subsequent to said time, and prior to the expiration of 20 years, the Bienville Water Supply Company was granted a franchise which granted to it the exclusive right of conducting and bringing water from any point other than Three-Mile creek, in the county of Mobile, for the purpose of supplying the Port of Mobile and the village of Whistler, which places included the city of Mobile. Plaintiff brought suit against the Bienville Water Supply Company to enjoin it from constructing said waterworks, contending that to permit it to do so would impair the contract of his testator. The court denied the relief prayed for by plaintiff upon the theory that his exclusive franchise granted him only the exclusive right to supply the city of Mobile with water from Three-Mile creek, and that his contract was not impaired by the granting of another franchise giivng to other persons the right to supply water from other sources than Three-Mile creek. But in the case at bar, the language used is not that all water supplied by the plaintiff shall be from wells adjacent to the Arkansas river, and in emergency from the Arkansas river, but that water supplied by it to supply "domestic use" shall be brought from "wells adjacent to the Arkansas river, and in emergency from the Arkansas river." No limitation is placed upon the source from which water is to be obtained to supply the streets, lanes, alleys, and public places of the city, or to be used in the extinguishing of fires, unless the term "domestic use" includes such places. The word "domestic," as defined by Webster's International Dictionary, means "of or pertaining to one's house or home, or one's household or family; relating to home life." And in *Crosby v. City Council of Montgomery*, 108 Ala. 498, 18 South. 723, the words "domestic purposes," as used in an ordinance granting a franchise to a water company, was construed to include "all uses which contribute to the health, comfort, and convenience of the family, in the enjoyment of their dwelling as a home." We

therefore conclude that the language of section 2, which provides that water to "supply domestic use" shall be supplied from wells adjacent to the Arkansas river, and in emergency from the Arkansas river, does not include water to supply the streets, lanes, alleys, squares, and public places of the city, or to be used in extinguishing fires, and there being no limitation in the ordinance upon the place or places from which water for such purposes may be brought by the waterworks company, the company is left free to obtain its water for such purposes from such source or sources as it may be able, and the rule announced in *Stein v. Bienville Water Supply Co., supra,* does not apply in this case.

This brings us to the third contention of defendants, which, if correct, limits the exclusive right of plaintiff to use the streets and public grounds of the city of Tulsa in the construction, operation, and maintenance of waterworks for the purpose of supplying the streets, alleys, lanes, and public grounds of the city to the extent that the city of Tulsa has no power to grant a similar right to other persons, firms, or corporations, but not to the extent that the city of Tulsa is precluded from using its streets and public grounds in constructing, maintaining, and operating a waterworks system of its own for such purpose. The defendants rely upon the following authorities to support their contention: *Lehigh Water Company's Appeal,* 102 Pa. 515; *North Springs Water Co. v. City of Tacoma,* 21 Wash. 517, 58 Pac. 773, 47 L. R. A. 214; *Thompson-Houston Elec. Co. v. City of Newton et al.,* (C. C.) 42 Fed. 723; *Street R'y Co. v. Detroit R'y Co. et al.,* 171 U. S. 48, 18 Sup. Ct. 732, 43 L. Ed. 67; *State ex rel. Town of Canton v. Allen,* 178 Mo. 555, 77 S. W. 868; *Hamilton Gas Light & Coke Co. v. Hamilton City,* 146 U. S. 258, 13 Sup. Ct. 90, 36 L. Ed. 963.

In *Lehigh Water Company's Appeal, supra,* the company contended that it had an exclusive franchise under the language of an act of the Legislature of Pennsylvania of 1874 (P. L. p. 93. §34), the wording of which is different from the wording of the statute

under which the city of Tulsa has the power to grant an exclusive franchise, and the court, in construing the company's franchise in that case, used the following language:

"While the language from the act of 1874 above quoted would seem to favor the exclusive right claimed by the water company, a careful examination of the clause 3 of section 34 (P. L. p. 94) shows that the Legislature intended that the right should be exclusive only as against other water companies, for immediately in this connection occur the words: 'And no other company shall be incorporated for that purpose until the said corporation shall have from its earnings realized and divided among its stockholders, during five years, a dividend equal to eight per centum per annum upon its capital stock.' The provision that another company shall not be incorporated was not intended to prohibit a city or borough from providing its citizens with pure water by means of works constructed by itself from money in its own treasury."

In *Water Company v. Knoxville,* 200 U. S. 22, 26 Sup. Ct. 224, 50 L. Ed. 353, the language of the ordinance was somewhat similar to the language in *Lehigh Water Company's Appeal, supra,* to the effect that the franchise provided that no contract or privilege would be granted to any other person or corporation to furnish water. The court, in construing this provision of the franchise, held that the city was not, in the absence of specific stipulation to that effect, precluded from establishing its own independent system of waterworks. That case cannot apply to the case at bar, for the reason that the contract in controversy in that case stipulated specifically against granting contracts or privileges to other persons or corporations, but made no specific stipulation against the city's exercising such privileges, and the rule that the expression of one excludes the other applied in that case; but in the case at bar the right granted is exclusive in general terms.

In *North Springs Water Co. v. City of Tacoma, supra,* in *Thompson-Houston Elec. Co. v. City of Newton et al., supra,* and in *Railway Co. v. Detroit Railway Co., supra,* no words of exclusion or of limitation upon the right of the city were used in the contract or statute under consideration as are used in the case

at bar, and in those cases there was no contention of a grant of an exclusive right by express terms of the contract, but that such right was granted by implication, and those cases therefore cannot apply to the case at bar.

A portion of the syllabus in *State ex rel. Town of Canton v. Allen, supra,* reads:

"Rev. St. 1899, § 6275, granting power to cities to purchase or erect and maintain electric plants for public and private light-ing, is not violative of Const. U. S. art. 1, § 10, nor Const. Mo. art. 2, § 15, forbidding the passage of any law impairing the obliga-tion of contracts, though an ordinance authorizing the issue of bonds for such purpose is passed while private persons, to whom had been granted an exclusive franchise, were operating a plant for that purpose, and the franchise had several years to run."

But a careful examination of the opinion discloses that there is not a word in the opinion supporting this syllabus. Not only does the court fail to use any language which can be construed as announcing such rule, but, on the contrary, it is specifically stated that the franchise under consideration was not an exclusive one.

A portion of the syllabus in *Hamilton Gas Light & Coke Co. v. Hamilton City, supra,* indicates that that case supports the con-tention of defandants in the case at bar now under consideration. The third syllabus of that opinion reads as follows:

"A grant, under legislative authority by a city, of an exclu-sive privilege, for a term of years, of supplying the city and its people with gas, does not prevent the city from erecting its own gas works under a state law giving it power so to do."

We have read this opinion with care and scrutiny, for the reason that, if the language of the opinion supports the syllabus quoted, that case would be decisive of the case at bar; but we are convinced that the rule laid down in said syllabus is not supported by the opinion in the case. The facts in that case were that by or-dinance passed July 9, 1855, the city of Hamilton authorized the Hamilton Gas Light & Coke Company to place pipes in its streets, lanes, alleys, and public grounds to convey gas for the use of the

city and its inhabitants; the company to have "'the exclusive privilege of laying pipes for carrying gas in said city and of putting up pipes in dwellings in connection with the street pipes for the term of twenty years from the passage of this ordinance,' but not to charge for gas furnished the city or its inhabitants a price greater than, during the period of the contract, was usually charged in cities of similar size and with like facilities for the making and furnishing of gas." The language of the ordinance quoted *supra,* by which the exclusive privilege was granted, is somewhat similar to the language of the ordinance in the case at bar, by which the exclusive grant is made. It is more nearly similar to the language of the ordinance in the case at bar than that of any other ordinance or statute which we have found construed by any court. Written contracts were made by the city of Hamilton with the gas company from time to time. The first one was dated April 10, 1862. The last one was dated July 16, 1883, and expired by its term January 1, 1889. On the 2d day of January, 1889, the council of the city of Hamilton passed a resolution reciting the termination of the last contract, and declaring that the city no longer desired the company to furnish gas for lighting streets and public places, and that it would not after said date pay for any lighting furnished by the gas company, and provided for submitting to a vote of the people the question of issuing bonds for the purpose of itself erecting gas works to supply the city and its inhabitants. The power to establish such plant by the city itself was claimed under an act of the Legislature of 1869 (66 Ohio Laws, p. 219, § 423) which granted to the council of all cities and villages the power, whenever they deemed it expedient for the public good, to erect gas works, or they could purchase gas works already erected therein. The gas company sought by the action to enjoin the city of Hamilton from proceeding to construct and establish its own gas plant upon the theory that by doing so it impaired the gas company's contract. By the Constitution of Ohio, adopted in 1851, it was declared that no special privilege or immunity shall ever be granted that may not be altered, revoked,

or repealed by the General Assembly. The action was brought in the Circuit Court of the United States for the Southern District of Ohio, and upon trial was dismissed by that court, from which the gas company appealed to the Supreme Court of the United States. We are unable to find any language in the opinion of the court that supports a construction of the exclusive grant in the ordinance to the gas company as it existed prior to the expiration of all contracts with the city, which occurred on the 1st day of January, 1889, as not excluding the right of the city to construct and operate its own gas plant, as is indicated in the syllabus of the opinion quoted. The court appears to have affirmed the judgment of the lower court upon two propositions, the first of which is stated by Mr. Justice Harlan, who delivered the opinion of the court, in the following language:

"So it may be said, in the present case, neither in the statutes under which the plaintiff became a corporation, *nor in any contract it had with the city, after January 1, 1889,* was there any provision that prevented the state from giving the city authority to erect and maintain gas works at its own expense, or that prevented the city from executing the power granted by the section of the Code of 1869 to which we have referred." (The italics are ours.)

This statement of the court indicates to our mind that it was the holding of that court that the gas company had no exclusive privilege or franchise after January 1, 1889, but we do not construe this language of the court to mean, nor are we able to find any other language in the opinion of the court that indicates, that the court construed the language of the original ordinance or the contract made thereunder expiring prior to January 1, 1889, as not granting such an exclusive franchise as would exclude the city from the right to build and operate its own gas plant. The court then proceeds to state that the case should also be affirmed upon the further consideration that, under the statute of Ohio in force at the time the gas company obtained its franchise, the General Assembly of the state had power to alter,

revoke, or repeal any special privilege granted, and that such gas company took its franchise subject to such provision of the Constitution, and that the act of the Legislature of 1869 giving to the council of cities and villages power to erect gas works was a modification of the gas company's right under its franchise. The effect of this last proposition of the court, as we understand the opinion, is that, although the gas company's contract with the city had been in force at the time the injunction was sought, it would not have been entitled to the injuncton for the reason that the act of the Legislature of 1869 repealed or modified the grant of the city to the gas company to the extent that it authorized the city to construct its own gas plant.

Our attention has been called by able counsel of appellee to decisions of various courts as supporting the construction of the ordinance in the case at bar to the effect that such exclusive grant is made by the ordinance as excludes both the city of Tulsa from constructing and maintaining waterworks itself, and from granting such right to other persons or companies. Among the decisions called to our attention are *Walla Walla v. Walla Walla Water Co.* 172 U. S. 1, 19 Sup. Ct. 77, 43 L. Ed. 341; *Westerly Waterworks Co. v. Town of Westerly et al.* (C. C.) 75 Fed. 181; *White v. City of Meadville,* 177 Pa. 643, 35 Atl. 695, 34 L. R. A. 567.

In the *Meadville Case,* the opinion turns upon the construction of a statute granting to the city the power to construct waterworks itself, or to contract with companies to build waterworks, and not upon the construction of any language in the grant of the city to the company. The statute controlling in that case granted to the city the power to construct its own waterworks or to contract for the erection of waterworks by a company to supply the city with water, and the court held that the power was granted to the city in the alternative, and that the city, having exercised its power under the statute to contract with the company to erect waterworks and supply it with water, was precluded from exercising the power to construct and operate waterworks.

In *Westerly Waterworks Co. v. Town of Westerly, supra,* the

question involved was similar to the question in the *Meadville Case*, and was the construction of a statute granting to the city the alternative power of either constructing its own waterworks or contracting with persons or companies to construct same, and the construction of the franchise to the water company was not involved. The court makes this clear in the following language:

"The question is not whether the town may grant a franchise to be exclusively exercised by the company for a term of years, without regard to its ability or willingness to furnish an adequate supply of suitable water; but the question is, rather, whether the town has not, by its own act under one branch of the law, limited its power to act under the other branch of the act."

In the *Walla Walla Case,* no exclusive franchise was granted by the city to the waterworks company. but there was a stipulation in the franchise to the effect that the city would not erect waterworks of its own. The court held the city had power to do this, and that having done so, it was a binding contract upon the city, but that such stipulation did not prevent the city from granting a similar franchise to another company. But the opinion of the court in. that case cannot be very helpful to us in this case, except to the extent that it holds that a city may contract with a waterworks company not to erect waterworks of its own.

The right of the state to control the use of the streets and alleys of its cities for the purpose of constructing and operating water works to supply such cities has been well expressed by Mr. Justice Harlan, in *New Orleans Waterworks Co. v. Rivers,* 115 U. S. 674, 6 Sup. Ct. 273, 29 L. Ed. 525, in the following language:

"The right to dig up and use the streets and alleys of New Orleans for the purpose of placing pipes and mains to supply the city and its inhabitants with water is a franchise belonging to the state, which she could grant to such persons or corporations, and upon such terms, as she deemed best for the public interest. And as the object to be attained was a public one, for which the state could make provision by legislative enactment, the grant of the franchise could be accompanied with such exclusive privi-

leges to the grantee in respect of the subject of the grant, as in .the judgment of the legislative department would best promote the public health and the public comfort, or the protection of public and private property." ·

This case has been repeatedly cited and approved by both the federal and state courts. Prior to the adoption of certain chapters of Mansfield's Digest of the Statutes of Arkansas, including section 755 thereof, the power to dig up and use the streets and alleys of the cities of the Indian Territory for the purpose of building and constructing waterworks to supply such cities with water was vested in Congress, under the section of the Constitution of the United States, giving it power to dispose of and make all needful rules and regulations respecting the territories of the United States. Subsequent to the adoption by Congress of said section 755, Mansf. Dig., and to the act of Congress of May 19, 1902, such right was vested in the cities of the Indian Territory, and the city of Tulsa by the ordinance involved in this case granted to plaintiff the exclusive right to construct and operate waterworks for certain purposes, and in doing so to use the streets, etc., of the city.

The word "exclusive" is defined in the Century Dictionary and Encyclopedia as "pertaining to the subject alone, not including, admitting; or pertaining to another or others; undivided; sole; as, an exclusive right or privilege; exclusive jurisdiction." The court, in *Re Union Ferry Company of Brooklyn,* 98 N. Y. 139, defines the word "exclusive" in the following language: "The word 'exclusive' is derived from '*ex,*' out, and '*claudere,*' to shut. An act does not grant an exclusive privilege or franchise unless it shuts out or excludes others from enjoying a similar privilege or franchise." In *Bass v. Pease,* 79 Ill. App. 308, the definition of the word "exclusive" given by the Century Dictionary, *supra,* is quoted with approval. If therefore the privilege and grant by the ordinance in the case at bar to plaintiff to construct and maintain waterworks and to use the streets, lanes, etc., of the city in doing so for certain purposes, is for such purposes a sole

and undivided right and privilege, how could it be so when this right and privilege at the same time may be shared and divided by the city? It is not an exclusive privilege if it includes others, and if it permits the city to be included in sharing of such right and privilege, it certainly appears to 'us that it thereby includes others, and that to give such term such a meaning would be in contradiction with its well-defined meaning. We therefore conclude that the exclusive privilege granted by the ordinance in the case at bar to plaintiff to use the streets, etc., of the city of Tulsa for certain purposes excludes the right of the city to use the streets, etc., for the same purposes, or to grant such privilege to other persons or companies.

It is also insisted by appellants that the demurrer should have been sustained for the reason that the court had no power to enjoin the city council in the exercise of its legislative functions, but appellants have indicated in their brief that, if this case should be reversed for the other reasons presented by them for reversal, they have no desire to press upon the court the consideration of this contention, but waive the same, and we therefore express no opinion upon this proposition.

By way of review of the rights of the parties under the franchise in this case, it is the opinion of the court that the Tulsa Water, Heat & Power Company has the exclusive right to construct, operate, and maintain waterworks for the purpose of supplying with water the streets, lanes, alleys, squares, and public places of the city, and for the extinguishing of fires in the city of Tulsa, and has the right to use the streets, lanes, etc., of the city in the operation and maintenance of its waterworks, in supplying the inhabitants of the city of Tulsa at the rates stipulated in the ordinance, but that the latter right to use the streets, etc., is not an exclusive right; that the city of Tulsa has the right to construct and operate a system of waterworks itself, or to grant such right to other persons or companies for the purpose of supplying the inhabitants of the city and for domestic and industrial purposes, and in doing so has the right to use or to grant the use of its

streets, lanes, etc., to other persons or companies for said purposes; but that the city of Tulsa has not itself the right to construct and maintain waterworks and in doing so use its streets, lanes, etc., or to grant such right to others for the purpose of supplying with water its streets, lanes, alleys, squares, and public places, or for extinguishing fires in the city of Tulsa. Plaintiff alleges in its complaint that defendants are preparing to issue waterworks bonds and to construct a system of waterworks for the city of Tulsa, but there is no allegation in the complaint to the effect that defendants are preparing or are about to construct a waterworks system for the purpose of supplying the streets, lanes, alleys, squares, and public places of the city and for extinguishing fires, and that in doing so they are preparing to use or are about to use the streets, etc., of the city of Tulsa for such purposes. The demurrer should have been sustained.

The judgment of the trial court is reversed, and the cause remanded.

All the Justices concur.