CITY OF MEMPHIS ex rel. DIAL et al. v. BROWDER et al. (No. 731.)

(Court of Civil Appeals of Texas.   Amarillo. Feb. 27, 1915.   Rehearing Denied March 27, 1915.)

1. WATERS AND WATER COURSES ⏠188 — WATER COMPANY — FRANCHISE—CONSTRUCTION.

The grant of a franchise to maintain a waterworks system in a city must be construed strictly against the grantee and in favor of the public.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 287, 288; Dec. Dig. ⏠188.]

2. WATERS AND WATER COURSES ⏠203 — PUBLIC WATER SUPPLY—FRANCHISE.

Where a waterworks franchise in its list of maximum rates that might be charged included a provision "churches free," the company was obliged to furnish water to a church for the operation of a pipe organ, though none of the churches in the city at the time the franchise was granted maintained a pipe organ, and such an instrument could be operated by power other than water power.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 289, 290–299; Dec. Dig. ⏠203.]

3. WATERS AND WATER COURSES ⏠203 — PUBLIC WATER SUPPLY—FRANCHISE—"DOMESTIC PURPOSE."

If the franchise could be construed to require water to be furnished free to the churches only for domestic and baptismal purposes, the furnishing of water for the operation of the pipe organ would be a "domestic purpose" (citing Words and Phrases, Second Series, Domestic Purposes).

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 289, 290–299; Dec. Dig. ⏠203.]

Appeal from District Court, Hall County; J. A. Nabers, Judge.

Mandamus by the City of Memphis, on relation of W. P. Dial and others, against D. Browder and others.   Judgment for the defendants, and relators appeal.   Reversed and rendered for relators.

Presler, Thorne & Hamilton, of Memphis, for appellants. · Moss & Leak, of Memphis, for appellees.

HALL, J.   This was a mandamus proceeding by appellants to compel appellees, who are operating the Memphis waterworks, under a franchise, to furnish free of cost to the Methodist Episcopal Church South of that city water required by the church.   The action is based upon the terms of an ordinance dated May 7, 1907, granting to appellee D. Browder, his successors and assigns, a franchise to erect, operate, and maintain a system of waterworks in said city.   It is alleged that the ordinance by express terms fixed maximum rates and, among other charges and regulations, provided that each church in the city of Memphis should be furnished water free of charge; that water was furnished to said church free of charge until a pipe organ was installed in said church. When appellees began to present bills for water furnished and upon the refusal of the church to pay the same, appellees disconnected and cut off the water supply.   It is alleged that the term of the franchise is 25 years.

Appellees answered by general demurrer, special exception, general denial, and specially denied that, under the terms of their franchise, they contracted to furnish water free

to churches, except for "domestic and baptismal purposes; that it was not contemplated or understood that appellees should furnish water for the operation of a pipe organ, and that such purpose was not contemplated and included within the terms of their franchise; that the pipe organ in said church could be operated by electricity or any other power used for operating machinery, and that appellees had not contracted to furnish power; that they had never refused to furnish appellants with all the water necessary for "domestic and baptismal" purposes, as was understood and agreed by the terms of their franchise; that prior to the installation of the pipe organ appellees had always furnished relators water free of charge, and had not refused to do so except to operate said pipe organ. Other matters are alleged which we think are immaterial, and will not be stated.

[1] The issues of fact, as well as of law, were submitted to the court, and from a judgment in favor of appellees this appeal is prosecuted. Neither findings of fact nor conclusions of law were filed. The determination of this controversy necessarily turns upon the construction of the franchise. In construing its language the trial court evidently applied the rules of interpretation applicable to ordinary contracts. In this we think he erred. While a franchise is in one sense a contract, they must be strictly construed against the grantee and in favor of the public. If there is a doubt as to the extent of the grant or the rights of the parties thereunder, such doubt must be resolved in favor of the public. Galveston Wharf Co. v. Gulf, Colorado & Southern Ry. Co., 81 Tex. 494, 17 S. W. 57; Ennis Waterworks Co. v. City of Ennis, 105 Tex. 63, 144 S. W. 930; East L. & R. R. Ry. Co. v. Rushing, 69 Tex. 306, 6 S. W. 837.

The Supreme Court of the United States, in Slidell v. Grandjean, 111 U. S. 437, 438, 4 Sup. Ct. 487, 28 L. Ed. 329, 330, used this language:

"It is also a familiar rule of construction that, where a statute operates as a grant of public property to an individual, or the relinquishment of a public interest, and there is a doubt as to the meaning of its terms, or as to its general purpose, that construction should be adopted which will support the claim of the government, rather than that of the individual. Nothing can be inferred against the state. As a reason for this rule it is often stated that such acts are usually drawn by interested parties; and they are presumed to claim all they are entitled to. The rule has been adopted and followed by this court in many instances in the construction of statutes of this description. [Authorities omitted.] The rule is a wise one; it serves to defeat any purpose concealed by the skillful use of terms, to accomplish something not apparent on the face of the act, and thus sanctions only open dealing with legislative bodies."

In Muncie Natural Gas Co. v. City of Muncie, 160 Ind. 97, 66 N. E. 436, 60 L. R. A. 822, where the court was construing that portion of the terms of a franchise fixing the price of gas for heating purposes, this language is used:

"For heating purposes, the price of gas was not to exceed 'three-quarters of the present current price of wood or coal for fuel,' and the cost of natural gas for lighting was not to exceed a like ratio to the cost of artificial gas. Then follows the provision as to the submission of the schedule of charges for heating purposes; next, the provision that the 'schedule shall not exceed the price above stated'; and, finally, the then current prices of wood, coal, and artificial gas are fixed. The parties sought a standard, and it ought to be the endeavor of the court, so far as possible, to give to that standard the element of certainty, and not to import elements of uncertainty into it that the parties did not see fit to mention. If there be any question concerning the correctness of this construction, the doubt must be solved in favor of the city, because public contracts should be construed, not contra proferentem, but liberally in favor of the public."

[2] In the instant case the appellees bind themselves as follows: "Sec. 7. The following maximum rate may be charged by grantee to the consumers." Then follows a schedule fixing the maximum monthly rate for residences, banks, hotels, etc., and contains this item: "For each church, * * * free." It appears that at the time the franchise was granted the churches in the city were small frame buildings. Since that date several of the religious denominations, including the members of the Methodist Episcopal Church South, have constructed modern buildings of brick costing between $20,000 and $35,000, provided with pipe organs, steam-heating plants, toilet rooms, and other conveniences of modern churches. It appears that at the time the pipe organs were installed the electric light company in the city of Memphis did not furnish a day current. On this account the pipe organs were installed to be operated with water motors. It is shown that the cost of operating the motor over and above water for other necessary purposes, in and about the Methodist Episcopal Church, would amount to the sum of approximately $4 per month. It does not appear that a day current is yet furnished by the electric light company, but the evidence shows that the organ bellows could probably be operated by one man.

It is insisted by appellees that at the time the franchise was granted it was not contemplated by the parties that water power would ever be used for operating the pipe organ, or they would not have agreed to furnish water to the churches free. D. Browder and his son both testified that at that time there was no pipe organ in any of the churches in Memphis; that they had never seen one in this section of the country.

Appellants insist that by any reasonable construction of the franchise it conferred upon appellees valuable concessions; that, since the term of the franchise existed for 25 years in a growing city, appellees might have reasonably expected an increase in the membership of the churches, resulting in

more modern and up-to-date structures, to be heated by steam, furnished with pipe organs, and that, because this growth and expansion of the city also enhanced the value of appellee's franchise, they would be compensated for an increase in the amount of water to be furnished to the churches. This argument is persuasive, even though a consideration is not necessary to support a franchise.

Appellees do not allege an ambiguity on the face of the franchise, and, under the authority of Morgan v. Turner, 4 Tex. Civ. App. 192, 23 S. W. 284, we doubt if evidence was admissible to explain such an ambiguity, if any existed. However, the testimony was admitted without objection. If the words "each church free" require and admit of explanation by proof of surrounding circumstances, and such proof creates a doubt, it should have, under all the authorities, been resolved in favor of appellants.

"Public grants of franchises, powers, rights, privileges, or property in which the government or public has an interest must be construed in favor of the grantor, and strictly against the grantee. * * * This rule applies in cases of doubt or ambiguity in the meaning or interpretation of language used, or where the grant is susceptible of two constructions; for, if the meaning is plain and clear, and the intention obvious, there is no room for construction." Joyce on Franchises, § 254.

Appellants contend for the rule that the intention of the parties to a written contract must be derived from the contract itself when its meaning is clear. Cheveral v. McCormick, 58 Tex. 440; Watrous Heirs v. McKie, 54 Tex. 65; Menard v. Sydnor, 29 Tex. 257. This rule applies with peculiar force to the language used in a grant.

"Corporate powers can never be created by implication nor extended by construction. No privilege is granted unless it be expressed in plain and unequivocal words, testifying the intention of the Legislature in a manner too plain to be misunderstood. When the state means to clothe a corporate body with a portion of her own sovereignty, and to disarm herself to that extent of the powers which belong to her, it is so easy to say so that we will never believe it to be meant when it is not said; and words of equivocal import are so easily inserted by mistake or fraud that every consideration of justice and policy requires that they should be treated as nugatory when they do find their way into the enactments of the Legislature. In the construction of a charter, to be in doubt is to be resolved; and every resolution which springs from doubt is against the corporation. This is the rule sustained by all the courts in this country and in England. No other has ever received the sanction of any authority to which we owe much deference. This court has asserted it times without number." Pennsylvania R. R. Co. v. Canal Commissioners, 21 Pa. 9.

"Grants of franchises by the state are to be so strictly construed as to operate as a surrender of the sovereignty no further than is expressly declared by the terms of the grant; the grantee takes nothing in that respect by inference." Syracuse Water Co. v. City of Syracuse, 116 N. Y. 167 (22 N. E. 381, 5 L. R. A. 546).

"Acts of incorporation and other statutes granting special privileges are to be construed strictly, and whatever is not given in unequivocal terms is withheld." Moran v. Miami County, 2 Black, 722, 17 L. Ed. 342.

"When a statute makes a grant of property, powers, or franchises to a private corporation or to a private individual, the construction of the grant in doubtful points should always be against the grantee, and in favor of the government." Oregon R. & N. Co. v. Oregonian Ry. Co., 130 U. S. 1, 9 Sup. Ct. 409, 32 L. Ed. 837.

The authorities might be multiplied interminably announcing this rule. R. D. Shure, a witness for appellees, testified that he was an agent engaged in selling pipe organs since 1907; that pipe organs are run principally by water power, but that they could be run by electricity, or by hand levers, but that the majority of such organs now sold are run by water power; that when he placed a contract with an organ company, which did not specify the kind of power to be used, it was generally understood that it should be operated by water power, because that was the most common form of power used in operating such organs. If we should admit that the terms of the franchise with reference to furnishing water to the churches is ambiguous, and that neither Browder nor his son had in contemplation the use of water power to operate pipe organs, the testimony of this witness creates such a doubt as to the proper construction to be placed upon that term of the contract as would require it to be resolved in favor of appellants. We gather from the record that churches in Memphis in 1907 had none of the modern conveniences, and that the Methodist Church was heated with ordinary stoves. Appellees could as consistently insist that they should not be required to furnish water for the steam-heating plant, since the church might still be heated with stoves, or with a hot-air furnace. The record does not show that any of the churches had baptistries at that time, and they could as consistently contend that those churches which define "baptizo" to mean immersion, and who doubtless baptized their converts in the creek, should not now be entitled, under the franchise, to sufficient water to fill their baptistries. Such a construction is manifestly too narrow. If we should accept the construction given by appellees, to the effect that the contract bound them to furnish water for "domestic and baptismal purposes only," still we think the court erred in rendering judgment against appellants.

The word "domestic" is rarely applied to public buildings. In Kimball v. N. E. H. W. Co., 107 Me. 467, 78 Atl. 865, 32 L. R. A. (N. S.) 805, the court said:

"Priv. Laws 1883, c. 168, chartering a water company to supply water for 'domestic' purposes, requires the company to furnish water to operate an elevator in a summer hotel; such use not being a development of power for commercial or industrial purposes." W. & P. 2d Series, 131.

"The words 'domestic purposes,' as used in an ordinance granting a franchise to a water company, include all uses which contribute to the health, comfort, and convenience of the family in the enjoyment of their dwelling as a home.

Mitchell v. Tulsa W. L., H. & P. Co. [21 Okl. 243], 95 Pac. 961; Crosby v. City Council of Montgomery [108 Ala. 498], 18 South. 723." Words and Phrases (2d Ed.) 2d Series, p. 131.

But, disregarding the construction evidently given the franchise by appellees, and strictly construing it, either in connection with or without the evidence admitted by the trial judge to explain its terms, we think appellees are bound to furnish water to each of the churches in the city of Memphis for all purposes connected with, and appropriate to, the worship and religious exercises and sacraments of the church. Organ music is, of course, an important part of each service, and the choice of power to be used in producing it is a matter which appellees cannot control. They had the right when the franchise was granted to specify and limit the supply of water to be furnished for any particular purpose. Failing to do this, and having accepted and acted under a franchise binding them in general terms only, they must furnish water for all purposes consistent with the proper conduct and management of such buildings and incident to the religious rights, exercises, and ordinances of that particular religious denomination.

Independent School Dist. of Le Mars v. Le Mars City Water & L. Co., 131 Iowa, 14, 107 N. W. 944, 10 L. R. A. (N. S.) 859, was a case in which a similar franchise was construed. The Supreme Court of Iowa did not apply the rule of strict construction to the franchise, but nevertheless said:

" 'The following shall be the maximum water rates to be charged annually by said grantee, his heirs or assigns, for the use of water, until changed as hereinafter provided.' Following this is a long schedule enumerating the service for which the maximum charges are fixed by the section, including therein public and private bathtubs, hotels, restaurants, boarding houses, and public and private water-closets and urinals. Churches and schools were designated therein as free. At the time the ordinance was passed the plaintiff owned and used three school buildings, which have ever since been furnished free water for drinking, cleaning, and heating purposes by Dunn and his successors. In 1904 the plaintiff erected a high school building on the site formerly occupied by one of the three old buildings. The new building is modern, and is provided with the usual and necessary water-closets and urinals, which are connected with the sewer system now in use in the city. After the completion of the building the plaintiff applied to the defendant for a sufficient supply of water for said building free of charge, and, the defendant refusing to so furnish it, this action was commenced. * * * The plaintiff's use of the water was not limited by express language or by implication; and, if the parties contemplated that the future growth and improvement of the city would demand water-closets and urinals in public and private buildings, there is no reason for saying that the public school buildings were excluded by implication from such consideration. It may as well be said that, because there was no sewer at the time, the rate fixed for such conveniences is not to govern."

The judgment is therefore reversed, and here rendered for appellants.

HENDRICKS, J. The rule of construction that where, by a statute, or act of the government, or subdivision of same, there is extended a grant, whether of property or of franchise, is construed strictly against the grantee and in favor of the government, as applicable to the construction of the franchise in this case, while not dissenting from same, I am not concurring therein. In the examination I have made of the subject with reference to public service corporations enjoying a franchise in performing services to the public, the rule is generally applied in cases where the question involved was whether the government or subdivision had extended the right, or power, claimed by the holder of the franchise to have been granted. Any power not granted is reserved by the government; any right not extended is retained by the grantor; and the rule of strict construction against the grantee is a protection to the government, and you infer it against the holder of the franchise and in favor of the government, where this question of power, or the exercise of the same, are involved. Likewise, where the government grants property, the extent of the grant is also resolved against the grantee. Of course, in this cause there is a contract with the town of Memphis, and the question of the right to charge the church for water for pipe organ purposes is involved, and in a sense the question of power to charge is involved, measured by the contract; but whether, when the matter of consideration for the grant in favor of the city, or in favor of some other person claiming the right through the city's dispensation, is involved, I am not wholly prepared to say that the rule of strict construction against the grantee, though it has its force, applies.

I think, however, that the franchise contemplates free water to churches for the life of the franchise consistent with the legitimate needs and purposes of the particular church. If the language, "The grantee herein shall furnish water to all churches free during the period of this franchise for the legitimate use of their church buildings for religious purposes," had been used, it would mean no less and no more that the actual language "churches free," as used in this franchise; and to attempt to limit this language to "baptismal" and so-called "domestic" purposes is strained. I think what is contemplated by the contract is the free use of water in the use of the church property for legitimate purposes for the period of said franchise, and that the use of a pipe organ is a legitimate purpose and contemplated by said contract, and the rule of parol proof for the purpose of interpreting its meaning as applied to the character of testimony in this record would not apply.

While not dissenting for the reason stated from the holding as to the application of the rule of strict construction to the franchise, however, I wholly concur in the disposition of the cause on the ground stated by me.